LOUIS A. ZAYAS, ESQ. (LZ-1881)
GINARTE O'DWYER GONZALEZ
GALLARDO & WINOGRAD LLP
400 Market Street
Newark, N.J. 07105
Counsel for the Plaintiff
(973) 854-8400

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ELVIN NEGRON, | ) | Case No.: |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | COMPLAINT |
| | ) | |
| MAYOR DAVID DELLE DONNA, TOWN | ) | |
| OF GUTTENBERG;  RITA PERITO, | ) | |
| SARGEANT ARTHUR ALLGUIER, | ) | |
| LIEUTENANT JOEL MAGGENHEIMER, | ) | |
| Defendants. | ) | |

The Plaintiff ELVIN NEGRON,  by and through his attorney,  LOUIS A. ZAYAS of

counsel to the law firm of  GINARTE  O'DWYER GONZALEZ GALLARDO & WINOGRAD

LLP, alleges the following upon information and  belief:

## INTRODUCTION

1.      This is a civil rights action brought by the Plaintiff for declaratory and injunctive

relief, and compensatory and punitive damages to redress the deprivation of civil rights afforded

to the Plaintiff under 42 U.S.C. §§ 1981 and 1983, and state causes of action.

## PARTIES

2.      Plaintiff Elvin Negron ("Negron"), a Hispanic male, is a citizen of the State of

New Jersey and resides in the County of Hudson. Negron was employed by the Town of

1

Guttenberg as a police officer at all relevant times as alleged in the Complaint herein.

3.       Defendant Township of Guttenberg is a municipality organized by virtue of New Jersey law and pursuant to that law, is to be known and distinguished by the name "Guttenberg." Defendant Guttenberg is sued to affect the full declaratory, injunctive, compensatory damages demanded by the Plaintiff.

.       4.       Defendant David Delle Donna ("Mayor Delle Donna"), a white male, was the duly elected Mayor for Guttenberg at all relevant times as alleged in the Complaint herein. Defendant Mayor Della Donna is sued in his official and individual capacity for the purpose of effecting the full the declaratory, injunctive, compensatory and punitive damages demanded by the Plaintiff.

5.   Defendant Rita Perito ("Perito"), a white female, is the niece of and co-conspirator with Mayor Della Donna and co-conspirator with for purposes of effecting Plaintiff's civil rights alleged herein. Defendant Perito is sued in her individual capacity for purposes of effecting the full the declaratory, injunctive, compensatory and punitive damages demanded by the Plaintiff.

6.   Defendant Sergeant Arthur Allguier ("Sgt. Allguier"), a white male, is a police sergeant and Plaintiff's direct supervisor at all relevant times as alleged in the Complaint. Sgt. Allguier is sued in his official and individual capacity for purposes of effecting full the declaratory, injunctive, compensatory and punitive damages demanded by the Plaintiff.

7.   Defendant Lieutenant Joel Maggenheimer ("Lt. Maggenheimer"), a white male, is a police lieutenant at all relevant times as alleged in the Complaint. Lt. Maggenheimer is sued in his official and individual capacity for purposes of effecting full the declaratory, injunctive, compensatory and punitive damages demanded by the Plaintiff.

## JURISDICTION

7a.            The jurisdiction of this Court is invoked by Plaintiff pursuant to 28 U.S.C.

§§1331 and 1343, which confers original jurisdiction upon the Court on the ground that the

instant action arises under the First, Fifth, Thirteenth and Fourteenth Amendments to the United

States Constitution and 42 U.S.C. §§ 1981 & 1983. Plaintiff also invokes this Court's pendent

jurisdiction with respect to Plaintiff's claims based on the common law causes of actions.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), in as much as the

Guttenberg can be found in the District of New Jersey, and the cause of action occurred in the

County of Hudson.


## FACTS

9.      In 1996, Negron was hired as a police officer for the Guttenberg Police

Department. From the beginning of Negron's employment until his termination, Negron was

subjected to a hostile work environment based on his race.

10.      Within a year of his employment, Negron's direct supervisor, Sgt. Allguier, began

making racist and offensive remarks to Negron such as: "Spic" "Nigger." During the same period

of time, Sgt. Allguier often humiliated Negron by stating: "Look at what the town hired, we have

a 3 out of 4 - a spic, nigger, and a girl."

11.      After two years or so of these comments on a daily basis, the harassment

escalated. Sgt. Allguier either directly participated or permitted pictures to be place on the

3

bulletin board in the roll call room of a black baby with a big afro with the inscription "P.O

Negron - New Years Eve 1975".

12.     On another occasion, Sgt. Allguier directly participated in or permitted the

posting of two pictures of an African American baby with the inscription "Missing, Elvin

Negron DOB 1971. Last seen 12/25/99, is possibly much older looking now" and "Have you

seen me?  Hi, my name is PO Elvin Negron. If you want to meet me, page me at ...."

13.     On another occasion, Sgt. Allguier directly participated in or permitted the

posting of a picture of officers and a group of African American men with the inscription "PO

Negron's police academy graduation picture."

14.     On another occasion, Sgt. Allguier directly participated in or permitted the

posting of a cartoon drawing of a black groom and white bride with the inscription "Negron

wedding 2002"

15.     On another occasion, Sgt. Allguier directly participated in or permitted the

posting of a Polaroid of a black background with the inscription "P.O. Negron at night".

16.     On another occasion,  Negron was out of work for a approximately a month

because of a knee injury. When Negron returned to work, Sgt. Allguier had distributed memos

with the inscription "To P.O. Negron NAACP award winner, wherever you are!"

17.     The racial remarks and conduct was persistent and severe, which caused Negron

to feel humiliated and embarrassed.

18.     Negron reported Sgt. Allguier's racist remarks and conduct to his superiors within

he police department but his complaints were ignored.

19.     The Guttenberg Police Department did not have any effective anti-discrimination

procedure to report unlawful harassment by a high-ranking police officer towards an subordinate.

4

As a result, Negron was precluded from taking any further action without violating the chain-of-command of the police department.

20.      In January 2005, Negron attended the swearing in of Mayor Della Donna as mayor of Guttenberg. In attendance was Perito, Mayor Della Donna's niece.

21.      After the swearing-in, Perito and Negron began to date on a regular basis.

22.      At some point, Mayor Della Donna learned of the relationship between Negron and Perito and objected to it. Upon information and belief, Mayor Della Donna's disapproved of Negron's relationship with Perito, in part, because of Negron's race.

23.      In his official capacity as the highest elected official in Guttenberg, Mayor Della Donna would frequently express his objection to Negron's relationship with Perito through Lt. Joel Maggenheimer, one of Negron's supervisors at the police department.

24.      Lt. Maggenheimer repeatedly warned Negron that the Mayor was unhappy with Negron dating his niece (Perito).  Negron understood Lt. Maggenheimer warning to be directed as his employment.

25.      When Negron sought to sever his romantic relationship with Perito, Perito became unstable, erratic and obsessive.  On October 20, 2005, Perito contacted Mayor Della Donna to assist her in bringing charges against Negron in the Town of North Bergen, a jurisdiction where Mayor Delle Donna has substantial political influence.

25.      In effort to fire Negron from the police department,  Mayor Delle Donna and Perito went to the North Bergen Police Department to seek a temporary restraining order ("TRO"), knowing that a TRO would jeopardize Negron's employment with the police department. When they arrived at the North Bergen police department, Mayor Delle Donna called Nick Sacco, the Mayor of North Bergen,  told him, "This has to stop, I want a restraining

5

order against this guy."

26.     After Mayor Delle Donna hangs up with Mayor Sacco, Mayor Delle Donna goes to the North Bergen Police Department to speak with Chief of Police Galvin, who is aware of the situation by Mayor Sacco or someone acting on his behalf. Perito and her cousin, Vanessa Perito, accompany Mayor Delle Donna.

27.     When Mayor Delle Donna, Perito, and Vanessa Perito arrive at Chief Galvin's office on the second floor of the police department, Chief Galvin says "Mayor can I help you?" Mayor Delle Donna says "I have a police officer from my town, I want him fired and I want a restraining order against him." Chief Galvin says "come in to my office."

28.     After the meeting with Chief Galvin, Negron is charged with false charge of domestic violence. The restraining order is immediately filed and faxed to the Guttenberg Police Department.

29.     On February 14, 2006 a final restraining order is entered against Negron. As a result of restraining order, an internal investigation is initiated Mayor Delle Donna for the sole purpose of firing Negron because of his interracial relationship with Perito.

30.     On September 29, 2006, Mayor Delle Donna causes Negron to be terminated from his employment.

31.     Mayor Delle Donna and Perito continue to work together to harass Negron by agreeing to file two criminal complaints against Negron for falsely violating the FRO entered on February 14, 2006. Both criminal proceedings were subsequently dismissed in favor of Negron. One criminal prosecution was dismissed on February 21, 2007 and the second in June 2007.

32.     On or about October 22, 2007, Negron attended a public meeting in City Hall to raise matters of public concern and interest before the Town Council, including but not limited

6

to, Mayor Delle Donna's federal indictment for corruption relating to a case which Negron had provided substantial assistance as a witness. Negron was a key participant and vocal critic of Mayor Delle Donna. When Defendant Lt. Maggenheimer, a political confederate of Mayor Delle Donna, spotted Negron in the crowd and he two police officers under his command to escort Negron out of the public meeting, thereby silencing Negron from criticizing Mayor Delle Donna and Guttenberg.

## I.

### FIRST CLAIM FOR RELIEF
### DEFENDANT MAYOR DELLE DONNA
### 42 U.S.C. §§ 1981

33.    All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

34.    Defendant Mayor Delle Donna, in his capacity as mayor, unlawfully and deliberately deprived the Plaintiff of "the right to make and enforce contracts…to the full and equal benefits of all laws and proceedings… enjoyed by white citizens" by causing him to be terminated from employment based on his race.

35.    Defendant Mayor Delle Donna used his considerable political power and influence to manufacture false and misleading evidence, such as the filing of the restraining order and termination proceedings, to deprive Negron of his employment with the Guttenberg police department because of his interracial relationship with Perito.

36.    As a direct and proximate cause of said acts, Plaintiff has suffered and continues to suffer loss of employment as a police officer, loss of income, employment benefits, and has suffered and continues to suffer mental and emotional distress, humiliation,

7

embarrassment, and damage to his reputation in an amount to be determined by a jury. Because of Defendants' willful and malicious conduct, Plaintiff seek punitive damages in his individual capacity in an amount to be determined by a jury.

## II.

### SECOND CLAIM FOR RELIEF
### DEFENDANT MAYOR DELLE DONNA & PERITO
### 42 U.S.C. §§ 1983

37.     All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

38.     Defendants Mayor Delle Donna & Perito, were acting under the color of law, when they subjected Plaintiff to the deprivation of the following rights, privileges and immunities secured by the Constitution and the laws of the United States:

(a)   false arrest secured under the Fourth Amendment to the United States Constitution;

(b)   malicious prosecution under the Fourth Amendment to the United States Constitution;

39.     As a direct and proximate cause of said acts, Plaintiff has suffered and continues to suffer loss of employment as a police officer, loss of income, employment benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to his reputation in an amount to be determined by a jury. Because of Defendants' willful and malicious conduct, Plaintiff seek punitive damages in their individual capacity in an amount to be determined by a jury.

**III.**

**THIRD CLAIM FOR RELIEF**
**DEFENDANT SGT. ALLGUIER**
**42 U.S.C. §§ 1981**

40.     All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

41.     Defendant Sgt Allguier, as Negron's direct supervisor, deprived the Plaintiff of "the right to make and enforce contracts…to the full and equal benefits of all laws and proceedings… enjoyed by white citizens" by subjecting him to a hostile and oppressive work environment based on his race.

42.     As a direct and proximate cause of said acts, Plaintiff has suffered and continues to suffer loss of employment as a police officer, loss of income, employment benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to his reputation in an amount to be determined by a jury. Because of Defendants' willful and malicious conduct, Plaintiff seek punitive damages in his individual capacity in an amount to be determined by a jury.

**IV.**

**FOURTH CLAIM FOR RELIEF**
**LT. MAGGENHEIMER**
**42 U.S.C. §1983**

43.     All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

9

44.     Lt. Maggenheimer, in his capacity as a police supervisory, deprived Negron of his constitutional right to engage in free speech and petition the government by forcibly removing Negron from a public and peaceful meeting without legal justification or cause. Negron's protected activity is secured under the First Amendment to the United States Constitution.

45.     As a direct and proximate cause of said acts, Plaintiff has suffered and continues to suffer loss of employment as a police officer, loss of income, employment benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to his reputation in an amount to be determined by a jury. Because of Defendant's willful and malicious conduct, Plaintiff seek punitive damages in his individual capacity in an amount to be determined by a jury.

V.
**FIFTH CLAIM FOR RELIEF**
**TOWN OF GUTTENBERG**
**42 U.S.C. §1983**

46.     All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

47.     At all times relevant to this complaint, Defendant Police Officers were acting under the direction and control of the Town of Guttenberg and its police department.

48.     Defendant Town of Guttenberg, pursuant to official policy, custom and practice, did intentionally, knowingly, or with deliberate indifference to the rights of Plaintiff failed to train, instruct, supervise, control and/or discipline, on a continuing basis Defendants in the performance of their duties.

49.     Defendant Town of Guttenberg, through its policy-makers, knew or, had they

10

diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have known that there was a history of misconduct of police abuse and/or the particular misconduct was the result of a difficult choice which training or supervision would have prevented and which would frequently result in a constitutional violation in the absence of such training and supervision.

50.   As a direct and proximate cause of said acts, Plaintiff has suffered and continues to suffer loss of employment as a police officer, loss of income, employment benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to his reputation in an amount to be determined by a jury.

WHEREFORE, Plaintiff prays that this Court enter an order finding as follows:

(a) That Plaintiff recover from the individual Defendants compensatory damages, exemplary and punitive damages, attorney's fees, and such other monetary relief as requested herein;

(b)   That the Plaintiff recover from the Defendant Guttenberg compensatory damages, exemplary, attorney's fees, and such other monetary relief as requested herein or may be deemed appropriate in an amount to be determined by a jury.

(c) And that the Court grant such other and further relief as it deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff requests a trial by jury on all issues so triable.

DATED: February 23, 2009

GINARTE O'DWYER GONZALEZ
GALLARDO & WINOGRAD LLP


*/S/LOUIS A. ZAYAS*

By: _____
LOUIS A. ZAYAS, ESQ.(lz-1881)
400 Market Street
Newark, N.J. 07105
Counsel for the Plaintiffs
(973) 854-8400

12