LOUIS A. ZAYAS, ESQ. (LZ-1881)
GINARTE O'DWYER GONZALEZ
GALLARDO & WINOGRAD LLP
400 Market Street
Newark, N.J. 07105
Counsel for the Plaintiff
(973) 854-8400

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELVIN NEGRON, | ) Case No.: 2:09-cv-00807 (FSH) |
|       Plaintiff, | ) |
| vs. | ) AMENDED COMPLAINT |
| MAYOR DAVID DELLE DONNA, TOWN OF GUTTENBERG; RITA PERITO, SARGEANT ARTHUR ALLGUIER, LIEUTENANT JOEL MAGGENHEIMER, | ) |
|       Defendant (s). | ) |

The Plaintiff ELVIN NEGRON, by and through his attorney, LOUIS A. ZAYAS of counsel to the law firm of GINARTE O'DWYER GONZALEZ GALLARDO & WINOGRAD LLP, alleges the following upon information and belief:

## INTRODUCTION

1. This is a civil rights action brought by the Plaintiff for compensatory and punitive damages and declarative and injunctive relief to redress the deprivation of civil rights afforded to the Plaintiff under 42 U.S.C. §§1981 and 1983, and state causes of action.

## PARTIES

2. Plaintiff Elvin Negron ("Officer Negron" or "Plaintiff"), a Hispanic male, is a citizen of the State of New Jersey and resides in the County of Hudson. Officer Negron was employed by the Town of Guttenberg as a police officer at all relevant times as alleged in the

1

Complaint herein.

3. Defendant Township of Guttenberg is a municipality organized by virtue of New Jersey law and pursuant to that law, is to be known and distinguished by the name "Guttenberg." Defendant Guttenberg is sued to affect the full declaratory, injunctive, compensatory damages demanded by the Plaintiff.

4. Defendant David Delle Donna ("Mayor Delle Donna"), a white male, was the duly elected Mayor for Guttenberg at all relevant times as alleged in the Complaint herein. Defendant Mayor Della Donna is sued in his official and individual capacity for the purpose of effecting the full the declaratory, injunctive, compensatory and punitive damages demanded by the Plaintiff.

5. Defendant Rita Perito ("Perito"), a white female, is the niece of and co-conspirator with Mayor Della Donna and co-conspirator with for purposes of effecting Plaintiff's civil rights alleged herein. Defendant Perito is sued in her individual capacity for purposes of effecting the full the declaratory, injunctive, compensatory and punitive damages demanded by the Plaintiff.

6. Defendant Sergeant Arthur Allguier ("Sgt. Allguier"), a white male, is a police sergeant and Plaintiff's direct supervisor at all relevant times as alleged in the Complaint. Sgt. Allguier is sued in his official and individual capacity for purposes of effecting full the declaratory, injunctive, compensatory and punitive damages demanded by the Plaintiff.

7. Defendant Lieutenant Joel Maggenheimer ("Lt. Maggenheimer"), a white male, is a police lieutenant at all relevant times as alleged in the Complaint. Lt. Maggenheimer is sued in his official and individual capacity for purposes of effecting full the declaratory, injunctive, compensatory and punitive damages demanded by the Plaintiff.

## JURISDICTION

7a.     The jurisdiction of this Court is invoked by Plaintiff pursuant to 28 U.S.C. §§1331 and 1343, which confers original jurisdiction upon the Court on the ground that the instant action arises under the First, Fifth, Thirteenth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1981 & 1983. Plaintiff also invokes this Court's pendent jurisdiction with respect to Plaintiff's claims based on the common law causes of actions.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), in as much as the Guttenberg can be found in the District of New Jersey, and the cause of action occurred in the County of Hudson.

## FACTS

9.     In 1996, Officer Negron was hired as a police officer for the Guttenberg Police Department. From the beginning of Officer Negron's employment until his termination, Officer Negron was subjected to a hostile work environment based on his race.

10.     Within a year of his employment, Officer Negron's direct supervisor, Sgt. Allguier, began making racist and offensive remarks to Officer Negron such as calling Officer Negron a "Spic" and "a Nigger." During the same period of time, Sgt. Allguier often humiliated Officer Negron by stating: "Look at what the town hired, we have a 3 out of 4 - a spic, nigger, and a girl."

11.     After two years or so of these comments on a daily basis, the harassment escalated. Sgt. Allguier either directly participated or permitted pictures to be place on the bulletin board in the roll call room of a black baby with a big afro with the inscription "P.O Officer Negron - New Years Eve 1975".

12. On another occasion, Sgt. Allguier directly participated in or permitted the posting of two pictures of an African American baby with the inscription "Missing, Elvin Officer Negron DOB 1971. Last seen 12/25/99, is possibly much older looking now" and "Have you seen me? Hi, my name is PO Elvin Negron. If you want to meet me, page me at ...."

13. On another occasion, Sgt. Allguier directly participated in or permitted the posting of a picture of officers and a group of African American men with the inscription "PO Negron's police academy graduation picture."

14. On another occasion, Sgt. Allguier directly participated in or permitted the posting of a cartoon drawing of a black groom and white bride with the inscription "Negron wedding 2002"

15. On another occasion, Sgt. Allguier directly participated in or permitted the posting of a Polaroid of a black background with the inscription "P.O. Negron at night."

16. On another occasion, Officer Negron was out of work for a approximately a month because of a knee injury. When Officer Negron returned to work, Sgt. Allguier had distributed memos with the inscription "To P.O. Negron NAACP award winner, wherever you are!

17. The racial remarks and conduct was persistent and severe, which caused Officer Negron to feel humiliated and embarrassed.

18. Officer Negron reported Sgt. Allguier's racist remarks and conduct to his superiors within the police department but his complaints were ignored.

19. The Guttenberg Police Department did not have any effective anti-discrimination procedure to report unlawful harassment by a high-ranking police officer towards an subordinate. As a result, Officer Negron was precluded from taking any further action without violating the chain-of-command of the police department.

20. In January 2005, Officer Negron attended the swearing in of Mayor Della Donna as mayor of Guttenberg. In attendance was Perito, Mayor Della Donna's niece.

21. After the swearing-in, Perito and Officer Negron began to date on a regular basis.

22. At some point, Mayor Della Donna learned of the relationship between Officer Negron and Perito and objected to it. Upon information and belief, Mayor Della Donna's disapproved of Officer Negron's relationship with Perito, in part, because of Officer Negron's race.

23. In his official capacity as the highest elected official in Guttenberg, Mayor Della Donna would frequently express his objection to Officer Negron's relationship with Perito through Lt. Joel Maggenheimer, one of Officer Negron's supervisors at the police department.

24. Lt. Maggenheimer repeatedly warned Officer Negron that the Mayor was unhappy with Officer Negron dating his niece (Perito). Officer Negron understood Lt. Maggenheimer's warning to be directed as his employment.

25. When Officer Negron sought to sever his romantic relationship with Perito, Perito became unstable, erratic and obsessive. On October 20, 2005, Perito contacted Mayor Della Donna to assist her in bringing charges against Officer Negron in the Town of North Bergen, a jurisdiction where Mayor Delle Donna has substantial political influence.

25. In effort to fire Officer Negron from the police department, Mayor Delle Donna and Perito went to the North Bergen Police Department to seek a temporary restraining order ("TRO"), knowing that a TRO would jeopardize Officer Negron's employment with the police department. When they arrived at the North Bergen police department, Mayor Delle Donna called Nick Sacco, the Mayor of North Bergen, told him, "This has to stop, I want a restraining order against this guy."

26. After Mayor Delle Donna hangs up with Mayor Sacco, Mayor Delle Donna goes to the North Bergen Police Department to speak with Chief of Police Galvin, who is aware of the situation by Mayor Sacco or someone acting on his behalf. Perito and her cousin, Vanessa Perito, accompany Mayor Delle Donna.

27. When Mayor Delle Donna, Perito, and Vanessa Perito arrive at Chief Galvin's office on the second floor of the police department, Chief Galvin says "Mayor can I help you?" Mayor Delle Donna says "I have a police officer from my town, I want him fired and I want a restraining order against him." Chief Galvin says "come in to my office."

28. After the meeting with Chief Galvin, Officer Negron is charged with false charge of domestic violence. The restraining order is immediately filed and faxed to the Guttenberg Police Department.

29. On February 14, 2006 a final restraining order is entered against Officer Negron. As a result of restraining order, an internal investigation is initiated Mayor Delle Donna for the sole purpose of firing Officer Negron because of his interracial relationship with Perito.

30. On September 29, 2006, Mayor Delle Donna causes Officer Negron to be terminated from his employment.

31. Mayor Delle Donna and Perito continue to work together to harass Officer Negron by agreeing to file two criminal complaints against Officer Negron for falsely violating the FRO entered on February 14, 2006. Both criminal proceedings were subsequently dismissed in favor of Officer Negron. One criminal prosecution was dismissed on February 21, 2007 and the second in June 2007.

32. On or about October 22, 2007, Officer Negron attended a public meeting in City Hall to raise matters of public concern and interest before the Town Council, including but not

limited to, Mayor Delle Donna's federal indictment for corruption relating to a case which Officer Negron had provided substantial assistance as a witness. Officer Negron was a key participant and vocal critic of Mayor Delle Donna. When Defendant Lt. Maggenheimer, a political confederate of Mayor Delle Donna, spotted Officer Negron in the crowd and he two police officers under his command to escort Officer Negron out of the public meeting, thereby silencing Officer Negron from criticizing Mayor Delle Donna and Guttenberg.

I.

### FIRST CLAIM FOR RELIEF
### DEFENDANT MAYOR DELLE DONNA
### 42 U.S.C. §§ 1981

33. All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

34. Defendant Mayor Delle Donna, in his capacity as mayor, unlawfully and deliberately deprived the Plaintiff of "the right to make and enforce contracts…to the full and equal benefits of all laws and proceedings… enjoyed by white citizens" by causing him to be terminated from employment based on his race.

35. Defendant Mayor Delle Donna used his considerable political power and influence to initiate the filing of false and misleading judicial and administrative legal proceedings to interfere and deprive Officer Negron's employment relationship with the Guttenberg police department, in part, because of his interracial relationship with Perito.

36. As a direct and proximate cause of said acts, Plaintiff has suffered and continues to suffer loss of employment as a police officer, loss of income, employment benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to his reputation in an amount to be determined by a jury. Because

of Defendants' willful and malicious conduct, Plaintiff seek punitive damages in his individual capacity in an amount to be determined by a jury.

## II.

### SECOND CLAIM FOR RELIEF
### DEFENDANT MAYOR DELLE DONNA & PERITO
### 42 U.S.C. §§ 1983

37.   All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

38.   Defendants Mayor Delle Donna & Perito, were acting under the color of law, when they subjected Plaintiff to the deprivation of the following rights, privileges and immunities secured by the Constitution and the laws of the United States:

(a)  false arrest secured under the Fourth Amendment to the United States Constitution;

(b) malicious prosecution and abuse of process under the Fourth Amendment to the United States Constitution;

39.   As a direct and proximate cause of said acts, Plaintiff has suffered and continues to suffer loss of employment as a police officer, loss of income, employment benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to his reputation in an amount to be determined by a jury. Because of Defendants' willful and malicious conduct, Plaintiff seek punitive damages in their individual capacity in an amount to be determined by a jury.

8

## III.

## THIRD CLAIM FOR RELIEF
## DEFENDANT SGT. ALLGUIER
## 42 U.S.C. §§ 1981

40. All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

41. Defendant Sgt Allguier, as Officer Negron's direct supervisor, deprived the Plaintiff of "the right to make and enforce contracts…to the full and equal benefits of all laws and proceedings… enjoyed by white citizens" by subjecting him to a hostile and oppressive work environment based on his race.

42. As a direct and proximate cause of said acts, Plaintiff has suffered and continues to suffer loss of employment as a police officer, loss of income, employment benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to his reputation in an amount to be determined by a jury. Because of Defendants' willful and malicious conduct, Plaintiff seek punitive damages in his individual capacity in an amount to be determined by a jury.

## IV.

## FOURTH CLAIM FOR RELIEF
## LT. MAGGENHEIMER
## 42 U.S.C. §1983

43. All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

44. Lt. Maggenheimer, in his capacity as a police supervisory, deprived

Officer Negron of his constitutional right to engage in free speech and petition the government by forcibly removing Officer Negron from a public and peaceful meeting without legal justification or cause. Officer Negron's protected activity is secured under the First Amendment to the United States Constitution.

45. As a direct and proximate cause of said acts, Plaintiff has suffered and continues to suffer loss of employment as a police officer, loss of income, employment benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to his reputation in an amount to be determined by a jury. Because of Defendant's willful and malicious conduct, Plaintiff seek punitive damages in his individual capacity in an amount to be determined by a jury.

## V.
## FIFTH CLAIM FOR RELIEF
## TOWN OF GUTTENBERG
## 42 U.S.C. §1983

46. All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

47. At all times relevant to this complaint, Defendant Police Officers were acting under the direction and control of the Town of Guttenberg and its police department.

48. Defendant Town of Guttenberg, pursuant to official policy, custom and practice, did intentionally, knowingly, or with deliberate indifference to the rights of Plaintiff failed to train, instruct, supervise, control and/or discipline, on a continuing basis individual defendants Mayor Delle Donna, Sgt. Allguier and Lt. Maggenheimer's in the performance of their duties.

49. Defendant Town of Guttenberg, through its policy-makers, knew or, had they

diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have known that there was a history of misconduct of police abuse and/or the particular misconduct was the result of a difficult choice which training or supervision would have prevented and which would frequently result in a constitutional violation in the absence of such training and supervision.

50. As a direct and proximate cause of said acts, Plaintiff has suffered and continues to suffer loss of employment as a police officer, loss of income, employment benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to his reputation in an amount to be determined by a jury.

## VI.

### CONSCIENTIOUS EMPLOYEE PROTECTION ACT N.J.S.A. 34:19-1 *et seg*

51. All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

52. The Town of Guttenberg and Mayor Delle Donna were the subject of a long-standing federal investigation into corruption. Officer Negron was in fact cooperating with federal law enforcement in that corruption probe, including wearing a wire. As a result of Officer Negron participation, the United States Attorney's Office prosecuted Mayor Delle Donna in the matter of U.S.A. v. Della Donna et al, 07-0784. Defendant Mayor Delle Donna was convicted by a jury, in part, for public corruption.

53. Defendants Town of Guttenberg and Mayor Delle Donna knew or reasonably suspected that Officer Negron was cooperating with the aforementioned federal investigation into public corruption and other official malfeasance.

11

54. Because of Officer Negron's whistleblowing activities, Defendants Town of Guttenberg and Mayor Delle Donna retaliated against Officer Negron in the terms and conditions of his employment, including but not limited to, the filing of false and misleading quasi-criminal and administrative charges designed to discredit him as a witness in the aforementioned federal probe and terminate his employment.

55. As a result of the aforementioned false and retaliatory charges caused to be filed by the CEPA Defendants, Officer Negron was unlawfully terminated from his position as a police officer.

56. As a direct and proximate cause of said acts, Plaintiff has suffered and continues to suffer loss of employment as a police officer, loss of income, employment benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to his reputation in an amount to be determined by a jury.

WHEREFORE, Plaintiff prays that this Court enter an order finding as follows:

(a) That Plaintiff recover from the individual Defendants compensatory damages, exemplary and punitive damages, attorney's fees, and such other monetary relief as requested herein;

(b) That the Plaintiff recover from the Defendant Guttenberg compensatory damages, exemplary, attorney's fees, and such other monetary relief as requested herein or may be deemed appropriate in an amount to be determined by a jury.

(c) And that the Court grants such other and further relief as it deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff requests a trial by jury on all issues so triable.

DATED: December 27, 2009

                                  GINARTE O'DWYER GONZALEZ
                                  GALLARDO & WINOGRAD LLP

                                  */S/ LOUIS A. ZAYAS*
By: _____
      LOUIS A. ZAYAS, ESQ.(lz-1881)
      400 Market Street
      Newark, N.J. 07105
      Counsel for the Plaintiff
      (973) 854-8400