UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DOCUMENT ELECTRONICALLY FILED

| | |
|---|---|
| ELVIN NEGRON<br><br>      Plaintiff<br><br>    v.<br><br>MAYOR DAVID DELLE DONNA, TOWN OF GUTTENBERG, RITA PERITO, SARGEANT ARTHUR ALLGUIER, LIEUTENANT JOEL MAGGENHEIMER<br><br>Defendants | Case No.: 2:09-cv-00807-FSH-PS |

**BRIEF IN SUPPORT OF DEFENDANTS TOWN OF GUTTENBERG, DAVID DELLE DONNA, AND LT. JOEL MAGENHEIMER'S MOTION TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT**

MOTION DATE: March 1, 2010

Oral Argument Respectfully Requested

Of Counsel:
Bruce A. Seidman, Esq.

On the brief:
Bruce A. Seidman, Esq.

## Table of Contents

**Page**

TABLE OF AUTHORITIES ....................................................................................i

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF UNDISPUTED FACTS ..........................................................4

ARGUMENT AT LAW.......................................................................................11

   POINT I...............................................................................................................11

      PURSUANT TO FED. R. CIV. P. 12(C), PLAINTIFF'S AMENDED
      COMPLAINT AGAINST THE DEFENDANTS, TOWN OF GUTTENBERG,
      DAVID DELLE DONNA, AND LT. JOEL MAGENHEIMER, MUST BE
      DISMISSED IN ITS ENTIRETY BECAUSE OF THE DOCTRINES OF
      THE ENTIRE CONTROVERSY AND/OR RES JUDICATA. ..................................11

      A.   STANDARDS GOVERNING A MOTION TO DISMISS PURSUANT TO
      FEDERAL RULE OF CIVIL PROCEDURE 12(C)..............................................11

      B.   STANDARDS GOVERNING A MOTION TO DISMISS PURSUANT TO
      FEDERAL RULE OF CIVIL PROCEDURE 56. ...................................................13

   POINT II ............................................................................................................15

      PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED AS IT IS
      BARRED BY THE APPLICATION OF THE ENTIRE CONTROVERSY
      DOCTRINE ........................................................................................................15

   POINT III ...........................................................................................................27

      PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED AS IT IS
      BARRED BY THE APPLICATION OF RES JUDICATA............................................27

CONCLUSION ...................................................................................................29

## TABLE OF AUTHORITIES

### FEDERAL CASES

Allen v. McCurry, 449 U.S. 90 (1980)...........................................................................26

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ............................................ 13, 14

Bernardsville Quarry v. Borough of Bernardsville, 929 F.2d 927 (3d Cir. 1991)............ 15

Campanello v. Port Authority, 590 F. Supp. 2d 694 (D.C. N.J. 2008) ............................ 11

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................... 14

Colburn v. Upper Darby Twp., 838 F.2d 663 (3d Cir. 1988), cert. denied, 489
    U.S. 1065 (1989) .................................................................................................. 13

Davis v. United States Steel Supply, 688 F.2d 166 (3d Cir. 1982), cert. denied,
    460 U.S. 1014 (1983) (§1981) ................................................................................ 19

Gunson v. James, 364 F. Supp. 2d 455 (D.N.J. 2005) ..................................................... 13

Jones v. Holvey, 29 F.3d 828 (3d Cir. 1994)........................................................... 18, 19,
                                                                                                           28

Mawhinney v. Bennett, 2010 U.S. Dist. LEXIS 1715 (Decided January  11, 2010).. 19, 20

Migra v. Warren City School District Board of Ed., 465 U.S. 75 (1984)........................ 27

Milikian v. Corradetti, 791 F.2d 274 (3d Cir. 1986)....................................................... 16

Morse v. Lower Merion School District, 132 F.3d 902 (3rd Cir. 1997) ......................... 12

Neitzke v. Williams, 490 U.S. 319 (1989) ...................................................................... 12

Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3d Cir. 2003) .......................................... 13

Oatway v. America International Group, Inc., 325 F.3d 184 (3d Cir. 2003) ............. 11, 12

Panek v. Bogucz, 718 F. Supp. 1228 (D.N.J. 1989) ....................................................... 12

Rolo v. City Investing, 845 F. Supp. 182 (D.N.J. 1993), aff'd, 155 F.3d 644 (3d
    Cir. 1998) ............................................................................................................... 12

Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004)................................................................. 11

Tancrel v. Mayor and Counsel of the Township of Bloomfield, 583 F. Supp. 1548
(D.C. N.J. 1984) ...................................................................................... 18, 19

Wilson v. Rackmill, 878 F.2d 772 (3d Cir. 1989) ......................................... 12

## STATE CASES

Arena v. Borough of Jamesburg, 309 N.J. Super. 106, 706 A.2d 790 (App.Div.
1998) ................................................................................................... 20, 21

Crispin v. Volkswagenwerks, A.G., 96 N.J. 336, 476 A.2d 250 (1984) ......................... 20

DiTrolio v. Antiles, 142 N.J. 253, 662 A.2d 494 (1995) ........................................... 16, 17

Falcone v. Middlesex County Medical Social, 47 N.J. 92, 219 A.2d 505 (1966) ............ 15

Hobart Brothers Co. v. National Union Fire Insurance Co., 354 N.J. Super. 229,
806 A.2d 810 (App.Div. 2002) ................................................................ 18

Joel v. Morrocco, 147 N.J. 546, 688 A.2d 1036 (1997) ........................................... 16, 17,
18

McNally v. Providence Washington Ins. Co., 304 N.J. Super. 83, 698 A.2d 543
(App.Div. 1997). ...................................................................................... 26

Mystic Isle Development Corp. v. Perskie & Nehmad, 142 N.J. 310, 662 A.2d
523 (1995) ................................................................................................ 16

Olds v. Donnelly, 150 N.J. 424, 696 A.2d 633 (1997) .................................................. 15

Thornton v. Potamkin Chevrolet, 94 N.J. 1, 462 A.2d 133 (1983) ................................. 15

Watkins v. Resorts International Hotel & Casino, Inc., 124 N.J. 398, 591 A.2d
592 (1991) ................................................................................................ 28

Woodward-Clyde Consultants v. Chemical & Pollution Sciences, Inc., 105 N.J.
464, 523 A.2d 131 (1987) .................................................................. 15, 20,
21

## DOCKETED CASES

Rita Perito v. Elvin Negron, Docket No. A-3817-05T1 .................................................. 10

## FEDERAL STATUTES

42 U.S.C. §1981 ....................................................................................... 1, 7,

iii

19

42 <u>U.S.C.</u> §1983 ............................................................................ 1, 26,
27

28 <u>U.S.C.</u> §1738 .................................................................................... 26

<u>Fed.R.Civ.P.</u> 12(c) .......................................................................... 4, 11,
13

<u>Fed. R. Civ. P.</u> 56(c) ............................................................................ 13

**STATE STATUTES**

<u>N.J.S.A.</u> 34:19-1 et seq ............................................................................ 2

<u>N.J. Const</u>. 1947, art. 6, §2, para.2 ...................................................... 18

**MISCELLANEOUS**

<u>R.</u> 4:5-1    .......................................................................................... 15

**PRELIMINARY STATEMENT**

The present litigation concerns a claim by plaintiff, Elvin Negron, ("Plaintiff"), against the Town of Guttenberg, (former) Mayor David Delle Donna, Lieutenant Joel Magenheimer (collectively "Movants"), Rita Perito, and Sergeant Arthur Allguier.  Plaintiff, a former Guttenberg police officer, has brought a six (6) count amended complaint (the "Amended Complaint").  In the First Count, brought under 42 U.S.C. §1981, Plaintiff alleges that he was terminated from his employment by Mr. Delle Donna through the filing of false judicial and administrative proceedings in response to Plaintiff's interracial relationship with Ms. Perito, Mr. Delle Donna's niece.  In the Second Count, brought under 42 U.S.C. §1983, Plaintiff alleges that Mr. Delle Donna violated his constitutional rights, in concert with Ms. Perito, through false arrest, malicious prosecution and abuse of process which resulted in his termination of employment.  In the Third Count, brought under 42 U.S.C. §1981, Plaintiff alleges that Sgt. Allguier violated his rights by subjecting him to a hostile work environment through racial remarks and conduct.  In the Fourth Count, brought under 42 U.S.C. §1983, Plaintiff alleges that his First Amendment rights were violated by Lt. Magenheimer when Plaintiff was forcibly removed from a public meeting.  In the

1

Fifth Count, brought under 42 U.S.C. §1983, Plaintiff alleges that at all times relevant, the defendant police officers were acting under the direction and control of the Town of Guttenberg and its police department and that the Town of Guttenberg intentionally, knowingly, or with deliberate indifference allowed its police officers to violate Plaintiff's rights. Lastly, in the Sixth Count, brought under N.J.S.A. 34:19-1 et seq., Conscientious Employee Protection Act ("CEPA"), Plaintiff alleges that he lost his employment as a result of retaliation by Mr. Delle Donna after Plaintiff cooperated with the federal authorities who successful prosecuted Mr. Delle Donna as a result of Plaintiff's cooperation.

Plaintiff alleges that Mr. Delle Donna together with his niece, Ms. Perito, whom Plaintiff had dated, filed false domestic violence charges against him resulting in the issuance of temporary restraining orders, one of them dated October 20, 2005, and ultimately a final restraining order against him which issued on February 14, 2006. Plaintiff alleges that as a consequence of the actions of Mr. Delle Donna, he was ultimately terminated from his employment as a police officer. In support of his federal malicious prosecution and abuse of process claims against Mr. Delle Donna, Plaintiff claims that Mr. Delle Donna acted together with Ms. Perito in the filing of two criminal

complaints for violation of the final restraining order, both of which were ultimately dismissed without conviction.

Prior to the institution of the Amended Complaint, Plaintiff was represented by different counsel. On October 18, 2006, Merick H. Limsky, Esq., of Loccke, Correia, Schlager, Limsky & Bukosky, filed a one-count complaint against the Town of Guttenberg (the "First Complaint"). Therein, Plaintiff alleged that Ms. Perito filed two domestic violence complaints against him, August 29, 2005 and October 20, 2005, which culminated in the issuance of a final restraining order on February 14, 2006. Plaintiff alleged that on March 28, 2006 a disciplinary hearing was held by the Town of Guttenberg Police Committee and that on September 18, 2006, the Police Committee of the Town of Guttenberg recommended Plaintiff's termination from the police department. Lastly, Plaintiff alleged that he was terminated from the police force. In the First Complaint, Plaintiff sought an order (1) dismissing the discipline imposed against him, (2) reinstating him to the police force, (3) awarding back pay, back benefits and seniority, and (4) awarding counsel fees and other relief.

The appellate division affirmed the February 14, 2006 final restraining order against Plaintiff.

Subsequently, a motion for summary judgment was filed by the Town of Guttenberg in the matter filed by Mr. Limsky, Esq.

Rather than contest the motion in light of the appellate decision affirming the final restraining order, Plaintiff's counsel elected to enter into a voluntary stipulation of dismissal with prejudice with regard to the First Complaint.

On September 11, 2007, Plaintiff, through David Zatuchni, Esq., filed another state court action, HUD-L-4535-07 ("Second Complaint"). This two-count complaint alleged that Plaintiff was terminated from his employment in retaliation for his cooperation with the federal authorities investigating public corruption in the Town of Guttenberg and David Delle Donna. The Second Complaint was dismissed without prejudice for Plaintiff to bring his Conscientious Employee Protection Act ("CEPA") claim in federal court but with prejudice as to Plaintiff's claim of malicious prosecution for bringing false charges (restraining orders) against him.

Movants now move, pursuant to Fed.R.Civ.P. 12(c), to dismiss with prejudice, the Amended Complaint based on the bar of the Entire Controversy Doctrine and/or res judicata.

## STATEMENT OF UNDISPUTED FACTS

1. Plaintiff alleges that he began his employment as a police officer with the Town of Guttenberg Police Department in approximately 1996. See, Certification of Bruce A. Seidman, Esq. ("Seidman Cert."), Exhibit A, ¶9.

4

2.    Plaintiff alleges that at all relevant times, David Delle Donna was the Mayor of the Town of Guttenberg.  <u>See</u>, Seidman Cert., Exhibit A, ¶4.

3.    Plaintiff contends that the Town of Guttenberg and David Delle Donna were the subject of a long-standing federal investigation into corruption.  <u>See</u>, Seidman Cert., Exhibit A, ¶52.

4.    Plaintiff asserts that he cooperated with federal law enforcement and wore a "wire" as part of the federal investigation in the corruption probe.  Plaintiff alleges that as a result of his cooperation with the federal authorities, Mr. Delle Donna was convicted, in part, of public corruption.  <u>See</u>, Seidman Cert., Exhibit A, ¶52.

5.    Plaintiff alleges that in retaliation for his protected whistleblowing activities, the Town of Guttenberg and Mr. Delle Donna retaliated against him which included, *inter alia*, the filing of false and misleading quasi-criminal and administrative charges against him.  <u>See</u>, Seidman Cert., Exhibit A, ¶54.

6.    Plaintiff alleges that as a result of the actions taken by the Town of Guttenberg and Mr. Delle Donna, he was unlawfully terminated from his employment as a police officer. <u>See</u>, Seidman Cert., Exhibit A, ¶55.

7.   Plaintiff alleges that Mr. Delle Donna objected to the relationship between his niece, Ms. Perito, and Plaintiff, in part because of Plaintiff's race. <u>See</u>, Seidman Cert., Exhibit A, ¶22.

8.   Plaintiff claims that Mr. Delle Donna expressed his objection to Plaintiff's relationship with Ms. Perito to Lt. Magenheimer, one of Plaintiff's supervisors, and that Lt. Magenheimer repeatedly warned Plaintiff that Mr. Delle Donna was unhappy with the dating relationship between Plaintiff and Ms. Perito. <u>See</u>, Seidman Cert., Exhibit A, ¶¶22-23.

9.   Plaintiff alleges that on October 20, 2005, Ms. Perito contacted Mr. Delle Donna to "assist her in bringing charges against Officer Negron in the Town of North Bergen" and that the two of them went to the North Bergen Police Department for the purpose of obtaining a temporary restraining order ("TRO"). <u>See</u>, Seidman Cert., Exhibit A, ¶25.

10.   Plaintiff asserts that as a result of these efforts, Plaintiff was charged with a false charge of domestic violence and a TRO was issued.  <u>See</u>, Seidman Cert., Exhibit A, ¶28.

11.   Plaintiff alleges that on February 14, 2006, a final restraining order ("FRO") was entered against him and that as a result of this order, Mr. Delle Donna initiated an internal investigation against Plaintiff for the sole purpose of having Plaintiff's employment terminated because of his interracial

relationship with Ms. Perito. <u>See</u>, Seidman Cert., Exhibit A, ¶29.

12. Plaintiff alleges that on September 29, 2006, Mr. Delle Donna caused Plaintiff to be terminated from his employment. <u>See</u>, Seidman Cert., Exhibit A, ¶30.

13. Beginning within one year of Plaintiff's 1996 employment as a police officer, Plaintiff alleges that Sgt. Allguier subjected him to a hostile work environment through a series of racial comments and other misconduct. <u>See</u>, Seidman Cert., Exhibit A, ¶¶9-17.

14. Plaintiff alleges that on October 22, 2007, Lt. Magenheimer forced Plaintiff from a public meeting at the Guttenberg City Hall because of Plaintiff's cooperation with the federal authorities in their investigation and indictment of Mr. Delle Donna. <u>See</u>, Seidman Cert., Exhibit A, ¶32.

15. On December 28, 2009, Plaintiff filed the present six-count Amended Complaint which alleges violation of his civil rights under 42 <u>U.S.C.</u> §§1981 and 1983. <u>See</u>, Seidman Cert., Exhibit A.

16. Plaintiff alleges that Mr. Delle Donna used his political power and influence to initiate the filing of false and misleading judicial and administrative legal proceedings against him which resulted in his loss of employment. <u>See</u>, Seidman Cert., Exhibit A, First Count.

17.   Plaintiff alleges that Mr. Delle Donna, acting under color of law, violated his constitutional rights by subjecting Plaintiff to false arrest and malicious prosecution and abuse of process resulting in his loss of employment.  See, Seidman Cert., Exhibit A, Second Count.

18.   Plaintiff alleges that Sgt. Allguier subjected him to a hostile and oppressive work environment based on his race which resulted in Plaintiff's loss of employment.  See, Seidman Cert., Exhibit A, Third Count.

19.   Plaintiff alleges that Lt. Magenheimer violated his First Amendment rights by removing him from the October 22, 2007 City Hall meeting resulting in Plaintiff's loss of employment. See, Seidman Cert., Exhibit A, Fourth Count.

20.   Plaintiff alleges that at all times relevant, Sgt. Allguier and Lt. Magenheimer were acting under the direction and control of the Town of Guttenberg and that the Town of Guttenberg intentionally, knowingly, or with deliberate indifference, failed to protect Plaintiff's rights resulting in Plaintiff's loss of employment.  See, Seidman Cert., Exhibit A, Fifth Count.

21.   Plaintiff alleges that as a result of his cooperation with the federal authorities in its investigation into corruption in the Town of Guttenberg and Mr. Delle Donna, the Town of Guttenberg and Mr. Delle Donna, in violation of CEPA,

8

retaliated against him by filing false and misleading quasi-criminal and administrative charges against him which resulted in his termination of employment. See, Seidman Cert., Exhibit A, Sixth Count.

22. On or about October 20, 2006, Plaintiff filed an the First Complaint through his counsel, Merick Limsky, Esq., with the offices of Loccke, Correia, Schlager, Limsky & Bukosky. See, Seidman Cert., Exhibit B, Exhibit 1.

23. In the First Complaint, Plaintiff alleged that he was employed as a police officer with the Town of Guttenberg. See, Seidman Cert., Exhibit B, Exhibit 1, ¶4.

24. Plaintiff alleged that on August 29, 2005, Ms. Perito filed a domestic violence complaint against him and obtained a TRO, which directed that all of Plaintiff's weapons be seized. See, Seidman Cert., Exhibit B, Exhibit 1, ¶7.

25. Plaintiff alleged that although on September 6, 2005 Ms. Perito voluntarily withdrew the TRO, on October 20, 2005, she filed another domestic violence complaint against Plaintiff and again obtained a TRO. See, Seidman Cert., Exhibit B, Exhibit 1, ¶¶9 and 14.

26. Plaintiff alleged that on February 14, 2006, the FRO was issued against him. See, Seidman Cert., Exhibit B, Exhibit 1, ¶16.

27.  Plaintiff alleged that on "September 18, 2006, the Police Committee of the Town of Guttenberg issued a series of Findings and Recommendations for the Town Counsel (sic) to adopt, ultimately recommending that the Plaintiff be terminated."  See, Seidman Cert., Exhibit B, Exhibit 1, ¶18.

28.  Plaintiff alleged that the Town of Guttenberg terminated his employment.  See, Seidman Cert., Exhibit B, Exhibit 1, ¶19.

29.  In the First Complaint, Plaintiff sought relief which included an order dismissing the discipline imposed on him, an order immediately reinstating Plaintiff to employment, an order awarding back pay, back benefits, seniority, and counsel fees, and other relief.  See, Seidman Cert., Exhibit B, Exhibit 1.

30.  On January 11, 2007, in the matter of Rita Perito v. Elvin Negron, Docket No. A-3817-05T1, the appellate division affirmed the FRO issued against Plaintiff.  See, Seidman Cert., Exhibit B, ¶3.

31.  On May 10, 2007, Karen A. Murray, Esq., filed a motion for summary judgment on behalf of the Town of Guttenberg to dismiss the First Complaint.  See, Seidman Cert., Exhibit B, ¶4.

32.  Rather than oppose the motion for summary judgment regarding the First Complaint, Merick Limsky, Esq., entered into

a Stipulation of Dismissal with Prejudice.  <u>See</u>, Seidman Cert., Exhibit B, ¶5; Exhibit B, Exhibit 2.

33.  On September 11, 2007, Plaintiff filed the Second Complaint in which he sought damages for his wrongful termination from the Guttenberg Police force.  <u>See,</u> Seidman Cert., Exhibit C.

34.  Count One of the Second Complaint was dismissed without prejudice and Count Two of the Second Complaint was dismissed with prejudice.  <u>See</u>, Seidman Cert., Exhibit D.

<b><u>ARGUMENT AT LAW</u></b>

<b><u>POINT I</u></b>

**<u>PURSUANT TO FED. R. CIV. P. 12(C), PLAINTIFF'S AMENDED COMPLAINT AGAINST THE DEFENDANTS, TOWN OF GUTTENBERG, DAVID DELLE DONNA, AND LT. JOEL MAGENHEIMER, MUST BE DISMISSED IN ITS ENTIRETY BECAUSE OF THE DOCTRINES OF THE ENTIRE CONTROVERSY AND/OR RES JUDICATA.</u>**

**<u>A.   Standards Governing a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(c).</u>**

The standard applied to a <u>Fed. R. Civ. P.</u> 12(c) motion for judgment on the pleadings is the same to that applied to a <u>Fed. R. Civ. P.</u> 12(b) motion to dismiss.  <u>Campanello v. Port Auth.</u>, 590 F.Supp. 2d 694, 698 (D.C. N.J. 2008); <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 (3d Cir. 2004).  The court may grant a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) if, "accepting all well-pleaded

11

allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." Oatway v. Am. Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003)(citations omitted). Fed. R. Civ. P. 12(b)(6) allows a party to move for dismissal of a complaint based upon the pleader's failure to state a claim upon which relief can be granted. The court does not need to credit a plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion School District, 132 F.3d 902, 906 (3rd Cir. 1997). The Rule 12(b)(6) analysis "is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims." Oatway, 325 F.3d at 187. "A Rule 12(b)(6) dismissal is appropriate if, as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one…'When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate…'" Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989), quoting, Neitzke v. Williams, 490 U.S. 319 (1989). While the court views all allegations in the complaint as true, dismissal must be granted when the allegations fail to demonstrate a cognizable claim. Rolo v.

<u>City Investing</u>, 845 F. Supp. 182, 216 (D.N.J. 1993), <u>aff'd</u>, 155 F.3d 644 (3d Cir. 1998); <u>Panek v. Bogucz</u>, 718 F. Supp. 1228, 1229 (D.N.J. 1989).   The most important determination in assessing a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) is "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide the defendants with adequate notice to frame an answer." <u>Colburn v. Upper Darby Twp.</u>, 838 F. 2d 663, 666 (3d Cir. 1988), <u>cert.</u> <u>denied</u>, 489 U.S. 1065 (1989).

A court "has the discretion to accept the extraneous material" submitted in support of a motion to dismiss under Rule 12(b)(6) which are outside the pleadings and "convert the motion into one for summary judgment." <u>Gunson v. James</u>, 364 F. Supp. 2d 455, 460-61 (D.N.J. 2005); see also <u>Fed. R. Civ. P.</u> 12(b).

**B.   Standards Governing a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 56.**

Further, where a motion for relief is filed under <u>Fed. R. Civ. P.</u> 12 (c) and the court looks beyond the pleadings, the summary judgment standard is the appropriate standard for disposition. <u>Nesbit v. Gears Unlimited, Inc.</u>, 347 F.3d 72, 83 (3d Cir. 2003).   Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." <u>Fed. R. Civ. P.</u> 56(c).   A fact is "material" if, under

the applicable substantive law, it is "essential to the proper disposition of the claim." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Id. at 248.

The moving party bears the initial burden of demonstrating an absence of genuine issue of material fact and entitlement to judgment as a matter of law.  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial and need not negate the other party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. Id. at 325.  Once the movant has met this initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, supra, 477 U.S. at 256.  The non-moving party may not simply rest upon its pleadings to satisfy its burden.  Id.   The non-moving party "must set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant." Id. Summary judgment is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." Celotex, supra, 477 U.S. at 327.  To successfully defend against

14

a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor." Anderson, supra, 477 U.S. at 252.


## POINT II

### PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED AS IT IS BARRED BY THE APPLICATION OF THE ENTIRE CONTROVERSY DOCTRINE

The Entire Controversy Doctrine of New Jersey precludes a plaintiff from litigating in a subsequent proceeding any claims that were litigated or could have been litigated in a prior proceeding. Bernardsville Quarry v. Borough of Bernardsville, 929 F.2d 927, 930 (3d Cir. 1991) (quoting Woodward-Clyde Consultants v. Chemical & Pollution Sciences, Inc., 105 N.J 464, 472-473, 523 A.2d 131 (1987)). The Entire Controversy Doctrine is codified in New Jersey Court Rule 4:30A which reads:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross- claims in summary actions).

The Supreme Court of New Jersey has explained that the rule is an advancement of R. 4:5-1, which requires parties to include in their original pleadings any other action or arbitration that was being contemplated. Olds v. Donnelly, 150 N.J. 424, 434,

696 A.2d 633 (1997).  The Rule requires that all related claims between litigants be included in a single litigation.  <u>Thornton v. Potamkin Chevrolet</u>, 94 N.J. 1, 462 A.2d 133 (1983); <u>Falcone v. Middlesex County Med. Soc.</u>, 47 N.J. 92, 219 A.2d 505 (1966). It follows, therefore, that claims that would fall under the classification of "could have been litigated in prior proceedings" would include any potential claims that a plaintiff considered or could have considered bringing during the initial proceeding.   Further, the Entire Controversy Doctrine will preclude further litigation even if the party who brought the initial suit was ignorant of the applicable law at the time of the suit.  <u>DiTrolio v. Antiles</u>, 142 N.J. 253, 274, 662 A.2d 494 (1995).

In discussing The Entire Controversy Doctrine, the Supreme Court has stated that "[t]he objectives behind the doctrine are threefold: (1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness, including both parties before the court as well as prospective parties; and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation." <u>Joel v. Morrocco</u>, 147 N.J. 546, 548, 688 A.2d 1036 (1997) (quoting <u>Mystic Isle Dev. Corp. v. Perskie & Nehmad</u>, 142 N.J. 310, 322, 662 A.2d 523 (1995)).  "The entire controversy doctrine reaches more broadly than the 'same cause of action'

16

requirement of traditional res judicata doctrine." <u>Milikian v. Corradetti</u>, 791 F.2d 274, 279 (3d Cir. 1986).

Of the three parts of the test, the Supreme Court has stated that the fairness aspect is the most important. <u>DiTrolio, supra,</u> 142 N.J. at 272. The Court has noted that fairness is represented in this context as "twin pillars of the entire controversy doctrine," which are fairness to the parties and fairness to the system of judicial administration. <u>Joel, supra,</u> 147 N.J. at 555 (quoting <u>Prevratil v. Mohr</u>, 145 N.J. 180, 197, 678 A.2d 243 (1996)). The rationale the Court adopted for declaring the fairness aspect to be paramount regarding the parties themselves was that fairness represents a protective concept that "focuses primarily on whether defendants would be in a better position to defend themselves if the claims against them had been raised and asserted in the first litigation." <u>DiTrolio, supra,</u> 142 N.J. at 272.

In regard to the judicial system's "pillar" of fairness, the Supreme Court has noted that when a Court allows a party to act unfairly and bring claims that would potentially be precluded under the doctrine, the unfairness will not only affect the opposing party but the unfairness will also be pushed upon the courts themselves. <u>Joel, supra,</u> 147 N.J. at 553. The Court went on to explain that "the test for whether claims are "related" such that they must be brought in a single action

17

under the New Jersey Entire Controversy Doctrine was expressed as follows: "if parties or persons will, after final judgment is entered, be likely to have engaged in additional rights and liabilities that derive from a single transaction or related series of transactions, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation." DiTrolio, supra, 142 N.J. at 268 (quoting O'Shea v. Amoco Oil Co., 886 F.2d 584, 590-591 (3d Cir. 1989)).  The Court has clarified that it is the facts of the controversy, not the legal issues, that must be interrelated to require the claims to all be filed in the first suit.  Id. at 271 (emphasis added).

If a party does not bring a claim because they choose to delay the litigation, the Court will preclude the later claim as not "to permit itself to be made a party to such strategic choices that wreak unfair results upon others." Hobart Bros. Co. v. Nat'l. Union Fire Ins. Co., 354 N.J.Super. 229, 241, 806 A.2d 810 (App.Div. 2002).

The Superior Court of New Jersey is a court of "original general jurisdiction in all causes." N.J. Const. 1947, art. 6, §2, para.2.  Therefore, federal constitutional claims can be raised in state court. Tancrel v. Mayor and Counsel of the Township of Bloomfield, 583 F.Supp. 1548, 1551 (D.C. N.J. 1984). "It is unquestioned that state courts have concurrent

jurisdiction with federal courts to hear section 1983 claims. *See Maine v. Thiboutot*, 448 U.S. 1, 3n.1, 65 L.Ed. 2d 555, 100 S.Ct. 2502 (1980)." Jones v. Holvey, 29 F.3d 828, 831 (3d Cir. 1994). Accordingly, the New Jersey state courts have "concurrent jurisdiction over claims under the Civil Rights Acts. E.g., Allen v. McCurry, supra, 449 U.S. at 99 n, 15 101 S.Ct. at 417 n. 15 (§1983); Bennun v. Bd. of Govs., 415 F.Supp. 1274, 1279 (D.N.J. 1976) (§§1983 & 1985)." Id. See also, Davis v. United States Steel Supply, 688 F.2d 166 (3d Cir. 1982), cert. denied, 460 U.S. 1014 (1983) (§1981).

In Tancrel, the court held that "[a] federal civil rights claim that could have been, but was not, presented in a previous state court action, can be precluded in a federal court action in accordance with state claim preclusion doctrine." Tancrel, supra, 583 F.Supp. at 1550. In support of this conclusion, Tancrel cited Davis v. United States Steel Supply, 688 F.2d 166 (3d Cir. 1982), cert. denied, 460 U.S. 1014 (1983), wherein plaintiff was barred from bringing a federal constitutional claim under 42 U.S.C. §1981 after unsuccessfully litigating a discriminatory discharge claim in state court under a city ordinance.

Moreover, New Jersey law requires that when a "constituent claim arises during the pendency of a suit and is part of the entire controversy, a litigant has an obligation to bring it to

the court's attention and to allow the judge to determine whether to join the claim to the current action or to reserve it for a subsequent suit.  *See McNally* (v. Providence Wash. Ins. Co., 698 A.2d 543 (App.Div. 1997), 698 A.2d at 547." Mawhinney v. Bennett, 2010 U.S. Dist. LEXIS 1715 at *27 (Decided January 11, 2010).  As was further held in Mawhinney, "[w]hen the litigant fails to seek leave to file a supplemental pleading and, thus, to enable the court to exercise its discretion, the claim is generally barred from subsequent adjudication.  *See McNally*, 698 A.2d at 547." Id.

Since the Entire Controversy Doctrine precludes claims that are based upon a set of facts that was already decided on its merits, claims that end in settlements or stipulations have traditionally been those under which the Entire Controversy Doctrine case law arises.  Under New Jersey Court Rule 4:37-1(a), plaintiffs are free to dismiss their actions by stipulation, which unless otherwise noted, will be deemed to be done without prejudice. R.. 4:37-1.  The Supreme Court of New Jersey has stated "the general principle that a dismissal with prejudice is a severe sanction that is imposed sparingly and 'only when no lesser sanction will erase the prejudice suffered by the non-delinquent party'".  Woodward-Clyde Consultants, supra, 105 N.J. at 471 (1987) (quoting Crispin v. Volkswagenwerks, A.G., 96 N.J. 336, 345, 476 A.2d 250 (1984)).

The distinction as to whether a case ended in a stipulation of dismissal with or without prejudice has become very important to disputes.  In <u>Arena v. Borough of Jamesburg</u>, 309 N.J.Super. 106, 109-10, 706 A.2d 790 (App.Div. 1998), the appellate division held that a prior case that resulted in a stipulation of dismissal without prejudice did not invoke the Entire Controversy Doctrine because the set of facts had not been decided on the merits.  In that holding, the appellate division was very specific that its decision was based upon the fact that the stipulation of dismissal was <u>without prejudice</u> stating that "[b]ecause this stipulation did not state that it was with prejudice, the dismissal was without prejudice and plaintiff remained free to file another action based upon the same set of facts." (emphasis added).  <u>Id</u>. at 112.  Further, the Supreme Court of New Jersey has held that a stipulation of dismissal without prejudice is not a decision on the merits.  <u>Woodward-Clyde, supra,</u> 105 N.J. at 475.

Therefore, pursuant to case law, a stipulation of dismissal with prejudice will be deemed to have been decided on the merits.  This is because a "with prejudice" distinction is either a very serious sanction that is used by the courts or a voluntary agreement that the parties enter into under N.J. Ct. R. 4:37-1.  In either case, the distinction that the stipulation of dismissal was with prejudice is meant to denote the finality

21

of the proceeding and thus could be considered to invoke the Entire Controversy Doctrine.    Where the second litigation is based on a the same core set of facts, the subsequent litigation is barred by the Entire Controversy Doctrine.

In the matter before this Court, Plaintiff's Amended Complaint violates the Entire Controversy Doctrine and must be dismissed.    On October 18, 2006, Merick H. Limsky, Esq., of Loccke, Correia, Schlager, Limsky & Bukosky, filed the First Complaint against the Town of Guttenberg in which Plaintiff sought an order dismissing the discipline imposed against him, reinstating him to the police force, and other relief.    See, Seidman Cert., Exhibit B, Exhibit 1.    In the First Complaint, Plaintiff alleged that on August 29, 2005, Ms. Perito filed a domestic violence complaint against him which resulted in the issuance of a TRO against him.    See, Seidman Cert., Exhibit B, Exhibit 1, ¶7.  The TRO required that he surrender all weapons in his possession, including his government-issued weapon.    Id. The First Complaint alleged that on September 6, 2005, Ms. Perito withdrew the TRO.    See, Seidman Cert., Exhibit B, Exhibit 1, ¶9.  Plaintiff further alleged that as a result of the TRO, on September 19, 2005, he was ordered to appear for a Fitness for Duty Psychological Examination.    See, Seidman Cert., Exhibit B, Exhibit 1, ¶10.  Plaintiff further alleged that on October 20, 2005, Ms. Perito filed a domestic violence complaint and

22

again obtained a TRO.  See, Seidman Cert., Exhibit B, Exhibit 1, ¶15.  In the First Complaint, Plaintiff stated that on February 14, 2006, a FRO was issued against him.  See, Seidman Cert., Exhibit B, Exhibit 1, ¶16.  Plaintiff contended that on September 18, 2006 the Police Committee of the Town of Guttenberg issued a series of Findings and Recommendations, which recommended to the Town of Guttenberg Town Council that Plaintiff be terminated.  See, Seidman Cert., Exhibit B, Exhibit 1, ¶18.  Ultimately, the Town of Guttenberg terminated him from the police force.  See, Seidman Cert., Exhibit B, Exhibit 1, ¶19.

The Amended Complaint is substantially premised upon the facts asserted in the First Complaint.  Once again, Plaintiff's claim centers around the issuance of the TRO obtained by Ms. Perito.  Plaintiff alleges that a TRO was issued against him on October 20, 2005, followed by the FRO being entered on February 14, 2006.  Plaintiff alleges that on September 29, 2006, he was terminated from the police force.  See, Seidman Cert., Exhibit A, ¶30.  The litigation of the Amended Complaint before this court commands a consideration of virtually the identical facts set forth in the First Complaint – the role of a TRO obtained by Ms. Perito for domestic violence that ultimately led to Plaintiff's termination of employment.  This basic factual foundation in the First Complaint is identical to the basic

23

factual foundation of four counts in this Amended Complaint – Counts One, Two, Five and Six.

In the First Complaint, Plaintiff brought suit to address his alleged wrongful termination as a police officer with the Town of Guttenberg Police Department.  The present Amended Complaint addresses the identical alleged wrongful termination. In both cases, domestic violence complaints filed against Plaintiff by Ms. Perito resulted in the issuance of a TRO which culminated in a FRO.  While Plaintiff now alleges that Ms. Perito was caused to act by her uncle, Mr. Delle Donna, this alleged fact does not change the basic factual or legal landscape that would permit Plaintiff to prosecute the present litigation.  At all times relevant, Plaintiff was in possession of the information and facts which would have permitted Plaintiff to press all of his claims against the Town of Guttenberg and Mr. Delle Donna in the First Complaint. Plaintiff cannot escape from this fact.  The fact pattern alleged in the Second Complaint only substantiates this conclusion.  See, Seidman Cert., Exhibit C.  Plaintiff's non-joinder of all of his claims in the First Complaint was at his peril.

The allegations against Sgt. Allguier for which Plaintiff seeks to hold the Town of Guttenberg liable in Count Five are based on facts known to Plaintiff long before the filing of the

24

First Complaint.  According to Plaintiff, he was subjected to a hostile work environment based on his race from the virtual beginning of his employment in 1996.  See, Seidman Cert., Exhibit A, ¶¶9-10.  That Plaintiff elected not to pursue his hostile work environment claim against the Town of Guttenberg in his First Complaint was again his choice and at his risk.  Any claim against the Town of Guttenberg based on a claim of a hostile work environment is barred.

In the instant Amended Complaint, Plaintiff contends that former Mayor Delle Donna retaliated against him in retaliation for Plaintiff's cooperation with the federal authorities who were investigating alleged corruption involving the Town of Guttenberg and Mr. Delle Donna.  See, Seidman Cert., Exhibit A, ¶¶52-54.  A review of the facts as alleged by Plaintiff proves that he was obviously aware of this information when he filed his First Complaint.

Plaintiff was terminated from the police force effective September 26, 2006.  See, Seidman Cert., Exhibit B, ¶6.  The First Complaint was filed on October 20, 2006.  It follows therefore that when the First Complaint was filed, not only had Plaintiff already cooperated with the federal authorities in the investigation of public corruption involving the Town of Guttenberg and Mr. Delle Donna, Plaintiff was aware of his purported claim that he was terminated from the police force due

25

to the retaliatory actions of Mr. Delle Donna.  It could not be otherwise.  Accordingly, Plaintiff's failure to not pursue his CEPA claim in the First Complaint was again at his own risk and is also barred.

Additionally, in the Amended Complaint, Plaintiff claims that Lt. Magenheimer violated his First Amendment rights "by forcibly removing Officer Negron from a public and peaceful meeting without legal justification or cause."  See, Seidman Cert., Exhibit A, ¶44.  Plaintiff alleges that on October 22, 2007 he was prevented from speaking at a Guttenberg City Hall meeting in which he intended to address the federal indictment of Mr. Delle Donna.  See, Seidman Cert., Exhibit A, ¶32.  The Second Complaint was filed on September 11, 2007.  At no time did Plaintiff ever seek leave to amend the Second Complaint to include this additional claim against Lt. Magenheimer and the Town of Guttenberg.  As cited above, Plaintiff was required to seek leave to file an amended complaint in the Second Count to include this additional new claim.  Mawhinney, supra, 2010 U.S. Dist at *27; see, McNally, supra, 304 N.J.Super. at 83. Respectfully, the Entire Controversy Doctrine bars Count Four based on his failure to seek leave to amend the Second Complaint to bring in the claim against Lt. Magenheimer.

The application of the Entire Controversy Doctrine in the present matter rests on the full faith and credit statute, 28

26

U.S.C. §1738.  <u>Allen v. McCurry</u>, 449 U.S. 90, 99 (1980).  <u>Allen</u> holds that <u>issues</u> which were actually litigated in state court are entitled to the same preclusive effect in a subsequent federal 42 <u>U.S.C.</u> §1983 suit as those issues would be treated in the courts of the state where the first judgment was issued.  In <u>Migra v. Warren City School Dist. Bd. of Ed.</u>, 465 U.S. 75, 85 (1984), the Supreme Court held that <u>claims</u> which could have been brought in state court but were not are entitled to the same preclusive effect in a subsequent federal 42 <u>U.S.C.</u> §1983 suit as if the claims were brought in a subsequent state litigation.

When Plaintiff filed the First Complaint, there was nothing which prevented him from pressing all of his purported claims against the Town of Guttenberg and Mr. Delle Donna as alleged in Counts One, Two, Five and Six.  With the core underlying facts of the two lawsuits identical, and the First Complaint being dismissed with prejudice, it is respectfully submitted that the Amended Complaint is barred by application of the Entire Controversy Doctrine.

### POINT III

### PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED AS IT IS BARRED BY THE APPLICATION OF RES JUDICATA

Movants also contend that under res judicata principles, Plaintiff's Amended Complaint must also fail.  Res judicata applies when (1) the judgment in the first action is valid,

27

final and on the merits, (2) there is identity of the parties, or the parties in the second action are in privity with those in the first action, and (3) the claim in the later action arises out of the same occurrence as the claim in the first action. Jones, supra, 29 F.3d at 830; Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412, 591 A.2d 592, 599 (1991).   It is indisputable that in the First Complaint Plaintiff sued the Town of Guttenberg to recover his job as a Guttenberg Police officer which he claimed was wrongfully terminated based on a TRO and FRO obtained by Ms. Perito.   Plaintiff cannot dispute but that the FRO was affirmed on appeal and that in response to these factual realities, Plaintiff voluntarily entered into a stipulation of dismissal with prejudice to terminate the First Complaint.   All of the required elements for the application of res judicata are present which would require the dismissal of the Amended Complaint.   The judgment in the First Complaint was valid, final, and on the merits, the parties in the First Complaint are identical and/or in privity to the parties in the Amended Complaint with the addition of Mr. Delle Donna who is alleged as the former mayor of the Town of Guttenberg to have used his position to adversely affect Plaintiff's employment, and the claims against the Movants arise, at least in part, on the same operative facts, i.e., the consequence of the TRO and FRO obtained by Ms. Perito against Plaintiff.   Therefore,

Plaintiff's claims predicated on the TRO, FRO, and his termination have been litigated on the merits and decided. These claims are barred.

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that the dismissal of the First Complaint "with prejudice" constituted a decision "on the merits." The Entire Controversy Doctrine mandates the dismissal of Plaintiff's Amended Complaint for any and all claims that were litigated or could have been litigated in the First Complaint. As the Amended Complaint rests on the same set of core facts as the First Complaint, it is respectfully requested that this court must dismiss Plaintiff's Amended Complaint with prejudice. Further, the Entire Controversy Doctrine requires dismissal with prejudice of the Amended Complaint insofar that Plaintiff failed to include in the First Complaint all of his causes of action or to amend the First and/or Second Complaints, as required, to include any new causes of action during the pendency of the First and/or Second Complaints. Lastly, pursuant to the doctrine of res judicata, the dismissal of the First Complaint through a voluntary stipulation of dismissal with prejudice requires the dismissal of the Amended Complaint for any causes of action predicated on the issuance of a TRO and FRO which

ultimately led to Plaintiff's termination from the Guttenberg
Police Department.

                              MARSHALL, DENNEHEY, WARNER,

                                COLEMAN & GOGGIN


                      By:_____
                                BRUCE A. SEIDMAN, ESQUIRE
                                Attorney for Defendants,
                                Town of Guttenberg, David
                                Delle Donna, and Lt. Joel
                                Magenheimer

Date: January 29, 2010

30