UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DOCUMENT ELECTRONICALLY FILED

| | |
|---|---|
| ELVIN NEGRON<br>Plaintiff<br><br>v.<br><br>MAYOR DAVID DELLE DONNA, TOWN<br>OF GUTTENBERG, RITA PERITO,<br>SARGEANT ARTHUR ALLGUIER,<br>LIEUTENANT JOEL<br>MAGGENHEIMER<br><br>Defendants | Case No.: 2:09-cv-00807-FSH-PS |

**TRIAL BRIEF IN SUPPORT OF DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT ON BEHALF OF DEFENDANTS TOWN OF GUTTENBERG, MAYOR DAVID DELLE DONNA, AND LT. JOEL MAGENHEIMER**

**TRIAL DATE: April 5, 2011**

Of Counsel:
Bruce A. Seidman, Esq.

On the brief:
Hillary A. Fraenkel, Esq.
Bruce A. Seidman, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................. 1

I.   THE FIFTH COUNT OF THE FOURTH COMPLAINT MUST BE DISMISSED AS THE
     PLAINTIFF IS NOT ENTITLED TO ASSERT A 42 U.S.C. § 1983 CLAIM
     ALLEGING FAILURE TO SUPERVISE, INSTRUCT AND/OR TRAIN IN THE
     ABSENCE OF ALLEGING A SPECIFIC CONSTITUTIONAL VIOLATION; THE TOWN
     OF GUTTENBERG CANNOT BE LIABLE ON A *RESPONDEAT SUPERIOR* THEORY
     AND PLAINTIFF CANNOT IDENTIFY ANY TOWN OF GUTTENBERG POLICY OR
     CUSTOM THAT PROXIMATELY CAUSED A CONSTITUTIONAL VIOLATION ....... 2

  A.  Plaintiff Fails to Allege a Specific Constitutional Violation... 2

  B.  Plaintiff Cannot Prove Injuries were the Result of a Policy,
      Practice or Custom Established by the Municipality and Followed
      by the Police Department......................................... 3

  C.  Plaintiff Cannot Prove Injuries as Result of Alleged Failure to
      Train........................................................... 6

II.  THE FOURTH COUNT AGAINST MAGENHEIMER MUST BE DISMISSED BECAUSE ON
     THE FACTS BEFORE THE COURT THERE ARE NO VIOLATIONS OF
     CONSTITUTIONAL RIGHTS AND THIS DEFENDANT IS ENTITLED TO QUALIFIED
     IMMUNITY. ...................................................... 8

  A.  As a Threshold Matter All Section 1983 Claims Against Magenheimer
      Should be Dismissed as There are No Violations of Any
      Constitutional Rights........................................... 8

  B.  Alternatively, Qualified Immunity Applies Because Magenheimer's
      Conduct was Lawful in the Situation He Confronted.............. 12

  C.  Alternatively, Magenheimer was Required to Enforce the FRO Which
      was Content Neutral and Time, Place and Manner Appropriate..... 14

III. THE STATUTE OF LIMITATIONS HAS RUN PRECLUDING PLAINTIFF FROM ASSERTING
     A LAD CLAIM ................................................... 155

  A. The Continuing Violation Doctrine is Inapplicable ............. 166

IV.  PLAINTIFF'S 42 U.S.C. §1983 FAILURE TO INSTRUCT AND/OR SUPERVISE
     CLAIM IN THE FIFTH COUNT MUST BE DISMISSED, IN PART, BECAUSE IT
     WAS FILED AFTER THE TWO YEAR STATUTE OF LIMITATIONS RAN. ...... 17

V.   PUNITIVES DAMAGES AS TO THE TOWN OF GUTTENBERG, DELLE DONNA AND
     MAGENHEIMER MUST BE DISMISSED. ............................... 19

VI.  PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE TO SUPPORT HIS CEPA
     CLAIM AND THE SIXTH COUNT OF THE FOURTH COMPLAINT MUST BE
     DISMISSED .................................................... 21

i

   A.   Plaintiff Cannot Establish the Elements for a CEPA Claim.....211

   B.   There is No Nexus Between the Alleged Whistle Blowing Activity and the Alleged Retaliation....................................255

   C.   Plaintiff Has Failed to Demonstrate that Defendants' Legitimate Justification for Termination Was Pretext......................27

VII.  PLAINTIFF'S CEPA CLAIM SHOULD BE DISMISSED AGAINST THE INDIVIDUALLY NAMED DEFENDANT DELLE DONNA .......................30

VIII.  THE WAIVER PROVISION OF CEPA BARS ALL COMMON LAW CLAIMS......300

IX.   PLAINTIFF'S LAD CLAIMS ARE SUBJECT TO DISMISSAL UNDER CEPA'S WAIVER PROVISIONS ..........................................333

X.    PLAINTIFF CANNOT ESTABLISH PERMANENCY OF EMOTIONAL DISTRESS CLAIMS WITHOUT EXPERT  OPINION. ..............................344

XI.   CONCLUSION ................................................37

**Cases**

Ali v. Rutgers, 166 N.J. 280, 765 A.2d 714 (2000) ...................15

Beasley v. Passaic County, 377 N.J.Super. 585, 873 A.2d 673 (App.Div.
     2005)................................................................34

Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996) ..............4

Berg v. County of Allegheny, 219 F.3d 261 (3d Cir. 2000) ........11, 13

Bielevicz v. Dubinon, 915 F.2d 845 (3d Cir. 1990) ...................4

Billet v. CIGNA Corp., 940 F.2d 812 (3d Cir. 1991) .................26

Blackburn v. United Parcel Serv., Inc., 3 F. Supp. 2d 504 (D.N.J.
     1998)..............................................................23

Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397
     (1997).............................................................7

Bollinger v. Bell Atlantic, 330 N.J.Super. 300, 749 A.2d 857 (App.Div.
     2000)..............................................................17

Brosseau v. Haugen, 543 U.S. 194 (2004) ...........................12

Bullington v. United Air Lines, Inc., 186 F.3d 1301 (10th Cir. 1999) .17

Butler v. Acme Markets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982) .....36

Carey v. Piphus, 435 U.S. 247 (1978) ..............................18

Carter v. City of Philadelphia, 181 F.3d 339 (3rd Cir. 1999) .........7

Catalane v. Gilian Instrument Corp., 271 N.J. Super. 476, 638 A.2d
     1341 (App. Div. 1994)..............................................19

Chardon v. Fernandez, 454 U.S. 6 (1981) ...........................16

City of Canton v. Harris, 489 U.S. 378 (1988) ..................5, 6, 8

Clifford v. Opdyke, 156 N.J.Super. 208, 383 A.2d 749 (App.Div. 1978) 35

Cokus v. Bristol Myers Squibb Co., 362 N.J.Super. 366, 827 A.2d 1173

   (Law Div. 2002).................................................31

Cox v. New Hampshire, 312 U.S. 569 (1941) ......................11, 14

Crane v. Yurick, 287 F.Supp.2d 552 (D.N.J. 2003) ...................32

Doe v. Groody, 361 F.3d 232 (3d Cir. 2004) ........................13

Ecker v. Dana Transportation Systems, Inc., 2006 WL 740468 (New Jersey

   Law Division, February 3, 2006)................................30

Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509 (3d Cir.

   1992)..........................................................28

Flaherty v. The Enclave, 255 N.J. Super. 407, 605 A.2d 301 (Law Div.

   1992)..........................................................31

Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989) .............4

Floorgraphics, Inc. v. News Am. Mktg. In-Store Srvs., 546 F.Supp.2d

   155 (D.N.J. 2008)..............................................36

Fuentes v. Perskie, 32 F.3d 759 (3d Cir. N.J. 1994) ...............28

Hall v. St. Joseph's Hospital, 343 N.J.Super. 88, 777 A.2d 1002

   (App.Div. 2001)................................................17

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ............3, 9, 11, 12, 13

Higgins v. Pascack Valley Hospital, 158 N.J. 404, 730 A.2d 327 (1999)

   ..............................................................22, 30

Josey v. John R. Hollingsworth Corp., 996 F.2d 632 (3d Cir. 1993) ...28

Kelly v. Berlin, 300 N.J.Super. 256, 692 A.2d 552 (App. Div. 1997) ..37

Kirk v. Newark, 109 N.J. 173, 536 A.2d 226 (1988) ...................9

Littman v. Firestone Tire & Rubber Co., 715 F. Supp. 90 (S.D.N.Y. 1989)........................................................26

Lucas v. Dover Corp., 857 F.2d 1397 (10th Cir. 1988) ...............26

Mancini v. Twp. of Teaneck, 179 N.J. 425, 846 A.2d 596 (2004) .......15

McDonnell Douglas Corp. v. Green, 411 U.S 792 (1973) ..............23

Mehlman v. Mobil Oil Corp., 153 N.J. 163 (1998) ....................22

Miller v. Beneficial Mgmt. Corp., 977 F.2d 834 (3d Cir. 1992) .......16

Mitchell v. Forsyth, 472 U.S. 511 (1985) .........................10

Monell v. Dept. of Social Servs. of New York, 436 U.S. 658 (1978) 4, 18

Montells v. Haynes, 133 N.J. 282, 627 A.2d 654 (1993) ..............15

Mosley v. Femina Fashions, 356 N.J. Super. 118 (App. Div. 2002), cert. denied, 176 N.J. 276 (2003)......................................22

Must v. W. Hills Police Dep't, 126 Fed. Appx. 539, 542 (3rd Cir. Ct. App. 2005)...............................................11, 12, 13

Nappe v. Anschelewitz, Barr Ansell & Bonello, 97 N.J. 37, 477 A.2d 1224  (1984).........................................................20

Notte v. Merchants Mut. Ins. Co., 386 N.J.Super. 623  (App.Div.), 902 A.2d 352, 185 N.J. 490, 502 (2006)...............................33

Palatnik v. Home Depot, Inc., 2006 U.S. Dist. LEXIS 14073 ..........16

Pearson v. Callahan, 129 S.Ct. 808 (2009) .........................9

Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995) .........19, 20

Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir. 1992) ...........8

Salem v. United States Line Co., 370 U.S. 31 (1958) ...............35

Saucier v. Katz, 533 U.S. 194 (2001) .........................9, 10, 12

Schneider v. Simonini, 163 N.J. 336, 749 A.2d 336 (2000 . . . . . . . . . . . . 18

Smith v. Wade, 461 U.S. 30 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Startzell v. City of Philadelphia, 533 F.3d 183 (3rd Cir. 2008) . . . . . . 11

Surles v. Greyhound Lines, Inc., 474 F.3d 288 (6th Cir. 2007) . . . . . . . 36

U.S. v. Garcia, 447 F.3d 1327 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 35

U.S. v. Ginsberg, 758 F.2d 823 (2nd Cir. 1985) . . . . . . . . . . . . . . . . . . . . . 36

Wilson v. Garcia, 471 U.S. 261 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Young v. Schering Corporation, 141 N.J. 16, 660 A.2d 1153 (1995) 31, 33


**Federal Statutes**

42 U.S.C. 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, 6, 18, 19

**State Statutes**

N.J.S.A. 2A:14-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.J.S.A. 2A:14-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

N.J.S.A. 2A:15-5.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

N.J.S.A. 2A:15-5.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

N.J.S.A. 2A:15-5.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

N.J.S.A. 2A:15-5.12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

N.J.S.A. 10:5-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.J.S.A. 34:19-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

N.J.S.A. 34:19-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

N.J.S.A. 34:19-3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

vi

<u>N.J.S.A.</u> 34:19-3(c)(1) ........................................... 22

<u>N.J.S.A.</u> 34:19-3(c)(2) ........................................... 22

<u>N.J.S.A.</u> 34:19-8 ............................................ 31, 33

<u>N.J.S.A.</u> 59:9-2(c) .............................................. 21

**Federal Rules**

<u>Fed. R. Evid.</u> 702 ........................................... 35, 36

**Treatises**

Sheldon Nahmod, *Section 1983 Discourse: The Move From Constitution to Tort*, 77 *Geo. L.J.* 1719, 1719 (1989) ............................... 18

## PRELIMINARY STATEMENT

The present litigation concerns a claim by plaintiff, Elvin Negron, ("Plaintiff" or "Negron"), against the Town of Guttenberg (the "Town"), Lieutenant Joel Magenheimer ("Magenheimer"), and ex-Mayor David Delle Donna ("Delle Donna") (the above listed defendants being collectively referred to herein as "Defendants"). There are three counts remaining in the Fourth Complaint, the Fourth Count (allegations of a violation of 42 U.S.C. § 1983, First Amendment), Fifth Count (allegations of a violation of 42 U.S.C. § 1983, Failure to Instruct, Supervise), and Sixth Count (allegations of a violation of N.J.S.A. 34:19-1 et seq., Conscientious Employee Protection Act ("CEPA")), filed by Negron on December 28, 2009. The First and Second Counts of the Fourth Complaint were dismissed pursuant to Federal Rule of Civil Procedure 12(c) in an Order dated March 19, 2010. Plaintiff voluntarily dismissed with prejudice the Third Count of the Fourth Complaint.

Plaintiff, a former Town police officer, alleges that he was terminated from his employment in retaliation for his cooperation with the federal authorities in their investigation of corruption in the Town which included the investigation of Delle Donna. Plaintiff alleges that Delle Donna caused his niece, Rita Perito ("Perito"), with whom Plaintiff had an extramarital relationship, to file false domestic violence charges which resulted in the issuance of temporary restraining orders ("TRO") and then a final restraining order ("FRO")

against him.  Prior to the filing of the Fourth Complaint, Plaintiff sequentially filed two Complaints in state court ("First Complaint" and "Second Complaint," respectively) and then a Complaint in Federal Court ("Third Complaint").  All of the claims in all of the complaints arise out of Plaintiff's termination as a police officer from the Guttenberg Police Department.  The First Complaint was dismissed with prejudice on June 7, 2007.  While the Second Complaint, filed September 11, 2007, included a CEPA claim, the Third Complaint, filed February 23, 2009, did not.  The Fourth Complaint was filed on December 28, 2009 after the parties agreed on June 30, 2009 to a dismissal of the Second Complaint with prejudice as to Count One (malicious prosecution) and without prejudice as to Count Two (CEPA). The Fourth Complaint is an amendment of the Third Complaint but includes the addition of Count Six, the CEPA claim.

### LEGAL ARGUMENT

I.   THE FIFTH COUNT OF THE FOURTH COMPLAINT MUST BE DISMISSED AS THE PLAINTIFF IS NOT ENTITLED TO ASSERT A 42 U.S.C. § 1983 CLAIM ALLEGING FAILURE TO SUPERVISE, INSTRUCT AND/OR TRAIN IN THE ABSENCE OF ALLEGING A SPECIFIC CONSTITUTIONAL VIOLATION; THE TOWN OF GUTTENBERG CANNOT BE LIABLE ON A *RESPONDEAT SUPERIOR* THEORY AND PLAINTIFF CANNOT IDENTIFY ANY TOWN OF GUTTENBERG POLICY OR CUSTOM THAT PROXIMATELY CAUSED A CONSTITUTIONAL VIOLATION

A.  Plaintiff Fails to Allege a Specific Constitutional Violation

In the Fifth Count, Plaintiff alleges an unspecified constitutional violation "in the absence of" Delle Donna and Magenheimer having the requisite training, instruction and/or

2

supervision.  Plaintiff does not allege that he was denied due process or any other cognizable constitutional right but rather seems to plead that his losing employment in and of itself is compensable based upon allegations that Delle Donna and Magenheimer were allegedly not properly trained and/or supervised and/or instructed. The law is clear that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  There is nothing within the Fifth Count that supports what "established statutory or constitutional right" Plaintiff was deprived of by either Delle Donna or Magenheimer.

The Fifth Count must be dismissed as Plaintiff is not entitled to assert a 42 U.S.C. § 1983 claim alleging a failure to supervise and/or instruct and/or train in the absence of alleging a specific constitutional violation.

**B.   Plaintiff Cannot Prove Injuries were the Result of a Policy, Practice or Custom Established by the Municipality and Followed by the Police Department.**

A municipality can only be held liable for the misconduct of its police force under §1983 and constitutional violations if a plaintiff can prove that his injuries were the result of a policy, practice or custom established by the municipality and followed by the police department. Monell v. Dept. of Social Servs. of New York, 436 U.S.

3

658, 691 (1978).   Plaintiff has failed to establish that the Town had any such policies or practices in place that would have caused his alleged constitutional injuries.   A municipality will not be held liable under a *respondeat superior* theory of liability.   Id. at 663. "When a suit against a municipality is based on §1983, the municipality can only be liable when the alleged [action] implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom."   Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996); Monell, supra, 436 U.S. at 691.

A government policy or custom can be established in two ways. Policy is made when a decision-maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict.   Alternatively, a course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law.   Beck, supra, 89 F.3d at 971; see also, Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).   A custom may also be established by evidence of knowledge by policymakers of the misconduct and acquiescence in the continuing action. Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989).

Here, the First Count which is the predicate 42 U.S.C. 1981 claim to establish the 42 U.S.C. 1983 in the Fifth Count was dismissed with prejudice through motion practice.   The only claim that can possibly

4

be analyzed under the Monell standard is the claim of violation of the Plaintiff's First Amendment rights in the Fourth Count in the Fourth Complaint; otherwise, as discussed above, Plaintiff does not claim a violation of a specific constitutional right in the Fifth Count. The only facts set forth by Plaintiff regarding Magenheimer are limited to the singular action of Magenheimer in removing Plaintiff from the public town meeting based upon Perito's FRO. Plaintiff offers no evidence which links Magenheimer's allegedly improper actions with any instruction, overt or covert, from the Town which ·would reflect a Town policy, practice or custom. Further, Plaintiff denied any knowledge of a single other incident when a Guttenberg police officer violated the constitutional rights of another person. Plaintiff's allegations "will not alone suffice to fasten liability on the city." City of Canton v. Harris, 489 U.S. 378, 379 (1988). To impose §1983 liability upon the Town on the basis of this singular event, (which, as set forth, *supra*, was arguably a proper and lawful action for which Magenheimer is subject to qualified immunity) would place the Town in a *respondeat superior* position of liability for every action of every town employee. This is clearly disallowed pursuant the Supreme Court's holding in Monell. Regardless of any claim Plaintiff seeks to advance, as there is absolutely no evidence for a reasonable jury to find that a custom or policy of the Town resulted in the Plaintiff's alleged damages, the federal civil rights claims in the Fifth Count of

the Fourth Complaint against the Town must be dismissed with prejudice.

### C.   Plaintiff Cannot Prove Injuries as Result of Alleged Failure to Train

In the Fifth Count of the Fourth Complaint, Plaintiff alleges a failure to train against the Town.   The Supreme Court has made it clear that a municipality, in certain situations, may be liable for constitutional violations arising from its failure to train employees. City of Canton v. Harris, 489 U.S. 378 (1988).   In Canton, the Supreme Court held that the first inquiry in any case alleging municipal liability under 42 U.S.C. §1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.

The inadequacy of training may serve as the basis for 42 U.S.C. § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.   Id. at 388.   Also, for liability to attach, the identified deficiency in a city's training program must be closely related to the ultimate injury.   Id. at 390.   Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality – a "policy" as defined by prior cases — can a  municipality be liable for such failure under §1983.   Id. at 389.

The Supreme Court reiterated the heavy burden on the plaintiff, noting in the context of an inadequate background screening case, that

6

in a §1983 action, "plaintiff must also demonstrate that, through its underline conduct, the municipality was the 'moving force' behind the injury alleged." Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 400 (1997) (emphasis in original)(citing Monell, supra, 436 U.S. at 694). When a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a §1983 suit is not held liable solely for the conduct of its employee. Id. at 405. Plaintiff is also required to prove state of mind in alleging a §1983 violation. Id. at 405-406.

Negron does not plead a violation of a specific constitutional right. Additionally, Plaintiff has presented no evidence to prove to a reasonable jury that any of the alleged misconduct resulted from the Town's deliberate indifference to train.

Carter v. City of Philadelphia, 181 F.3d 339 (3rd Cir. 1999), outlines the three-part test to be applied in order for a municipality's failure to train to constitute "deliberate indifference". A plaintiff must establish that "(1) the municipal policyholders know that its employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. Id. at 357 (emphasis added). Not only has Plaintiff failed to identify the

7

specific constitutional violation, he has also failed to address the <u>particular</u> situation with which the town personnel were confronted. With specific regard to Magenheimer, the particular issue is the tension between First Amendment rights and enforcement of a FRO. Plaintiff offers no evidence that the Town policyholders had knowledge that its police officers would confront the particular issue that confronted Magenheimer.   The record is devoid of evidence of any prior similar incident.

Negron has also failed to identify the specific training the Town should have offered.   It is legally insufficient to merely allege what a municipality "could have done."   <u>City of Canton, supra,</u> 489 U.S. at 392.        Plaintiff has failed to present any expert testimony to establish a lack of training.   <u>Russo v. City of Cincinnati</u>, 953 F.2d 1036, 1047 (6th Cir. 1992).   As to any failure to train claim, as no reasonable jury  ·would find a legally sufficient basis to fine for Plaintiff, dismissal is warranted and the Fifth Count of the Fourth Complaint must be dismissed with prejudice.

II.   **THE FOURTH COUNT AGAINST MAGENHEIMER MUST BE DISMISSED BECAUSE ON THE FACTS BEFORE THE COURT THERE ARE NO VIOLATIONS OF CONSTITUTIONAL RIGHTS AND THIS DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.**

   **A.   As a Threshold Matter All Section 1983 Claims Against Magenheimer Should be Dismissed as There are No Violations of Any Constitutional Rights**

   Negron asserts that Magenheimer deprived him of his constitutional rights to engage in free speech and petition the

8

government in violation of 42 U.S.C. 1983.   To establish a claim under 42 U.S.C. 1983, a plaintiff must prove that the defendant acted under color of state law and that the defendant deprived the plaintiff of a federal statutory or constitutional right.   Kirk v. Newark, 109 N.J. 173, 536 A.2d 226, 235 (1988).   For the reasons set forth below, the Fourth Count must be dismissed pursuant to the doctrine of qualified immunity.

As stated in Pearson v. Callahan, 129 S.Ct. 808, 815 (2009),

> the doctrine of qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

As further stated in Pearson,

> [q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. (citations omitted).

Id.

Under Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step procedure for addressing a claim of qualified immunity.   First, there had to be a determination whether the facts alleged made out a violation of a constitutional right.   Second, if the

9

first step was established, the court would then have to determine whether the right at issue was "clearly established" at the time of the alleged violation.    "'If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.'"    Id. at 201. Qualified immunity is immunity from suit and not just a defense to liability.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Magenheimer is entitled to qualified immunity even if he made a reasonable mistake about the legality of his actions.  Saucier, supra, 533 U.S. at 205.

Magenheimer did not violate any constitutional right of the Plaintiff.  Magenheimer testified that Negron arrived early for a Town council meeting, on October 22, 2007, for which he was allowed to stay.  When Perito arrived prior to the meeting, Magenheimer informed her that it was best that she not enter the room since Negron was present.  However, Perito responded that since she had the FRO, she was entering and he had to leave.  Magenheimer then asked two police officers who were there to inform Plaintiff that he had to leave because of the FRO.  Magenheimer based his decision on the FRO and the history of problems between Perito and Negron.  The records shows that Magenheimer was aware of these problems between Perito and Plaintiff, because Plaintiff would actually call Magenheimer to report the problems.

A consideration of the Saucier analysis rejects a finding of a violation of a constitutional right, never mind one that was clearly

10

established.   The catalyst to have Negron removed from the Town council meeting was Perito's appearance at the meeting and her advisement of the possession of a legally valid and enforceable FRO. If Perito had not been at the meeting and informed Magenheimer of her valid and enforceable FRO, Plaintiff would have been able to stay at the meeting.   The constitutional dimensions of the First Amendment are not boundless.   Cox v. New Hampshire, 312 U.S. 569 (1941); Startzell v. City of Philadelphia, 533 F.3d 183 (3rd Cir. 2008).   The privilege of free speech is not absolute.   To avoid a potential physical confrontation, First Amendment rights can yield.   Startzell, supra.

"Qualified immunity shields an executive official from suit under section 1983 so long as the officer's 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Must v. W. Hills Police Dep't, 126 Fed. Appx. 539, 542 (3rd Cir. Ct. App. 2005)  (citing Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)).

The facts do not support a claim that Plaintiff's First Amendment rights were violated.   Magenheimer acted objectively reasonable under the circumstances presented by removing Plaintiff from the public meeting based upon Perito having a legal FRO issued against Negron. Therefore, Plaintiff's 42 U.S.C. 1983 claim should be dismissed. However, even if this Court should conclude otherwise, Plaintiff

11

cannot establish that the right at issue was clearly established under the precise facts presented to Magenheimer. Respectfully, as no reasonable jury ·would find a legally sufficient basis to find for Plaintiff, the Fourth Count of the Fourth Complaint alleging a 42 U.S.C. 1983 claim must be dismissed with prejudice as to Magenheimer.

**B. Alternatively, Qualified Immunity Applies Because Magenheimer's Conduct was Lawful in the Situation He Confronted**

Magenheimer is entitled to qualified immunity even if he made a reasonable mistake about the legality of his actions. _Saucier_, _supra_, 533 U.S. at 205. "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." _Id._ at 202. "(B)are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." _Harlow v. Fitzgerald_, 457 U.S. 800, 817 (1982). "Even if the plaintiff's submissions are sufficient to make out a constitutional violation, the officer remains entitled to immunity 'when she makes a decision that . . . reasonably misapprehends the law governing the circumstances she confronted.'" _Must, supra_, 126 Fed. Appx. at 542 (citing _Brosseau v. Haugen_, 543 U.S. 194, 198 (2004)). "At this stage of the analysis, the question is whether the constitutional right that the officer has allegedly violated was 'clearly established' at the time he or she acted." _Id._ "In other words, qualified immunity will apply unless 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he

12

confronted.'" Must, supra, 126 Fed. Appx. at 542 (citing Saucier, 533 U.S. at 202).

"Qualified immunity shields an executive official from suit under section 1983 so long as the officer's 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Must, supra, 126 Fed. Appx. at 542 (citing Berg v. County of Allegheny, 219 F.3d 261, 272 (3rd Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In Section 1983 actions against police officers, a plaintiff cannot press the merits of the case until the Court determines whether or not the police officer enjoys the benefit of qualified immunity. See, Harlow, supra. The issue of whether or not a defendant is entitled to the benefit of qualified immunity is a question of law to be decided by the Court. Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004).

Magenheimer acted lawfully and reasonably based upon the tumult of the moment and the facts as presented to him. To deny Magenheimer the requested relief based upon the facts with which he was confronted would result in a rule that leaves police officers helpless to enforce FROs for fear of facing personal liability for violation of free speech rights if they elect to protect a person from the risk of bodily harm. The record is bereft of any evidence that Magenheimer was "plainly incompetent" or that he intended to break the law. Lastly, case law provides that if there was any mistake as to what the law required, any alleged mistake by Magenheimer must be viewed as a

13

reasonable one entitling him to the benefits of qualified immunity. Pearson, supra, 108 U.S. at 815.   It is reasonable for a police officer to enforce a FRO at a town meeting while possibly mistakenly precluding someone for allegedly trying to assert First Amendment Rights. It was reasonable for Magenheimer to believe that asking Negron to leave was proper given the FRO against Plaintiff and in favor of Perito.

Qualified immunity should apply to the conduct of Magenheimer because it would be clear to a reasonable officer that separating Plaintiff from Perito based upon the FRO issued against Plaintiff was lawful conduct in the situation in which the officer was confronted. No reasonable jury would find otherwise.

**C.   Alternatively, Magenheimer was Required to Enforce the FRO Which was Content Neutral and Time, Place and Manner Appropriate**

A municipality has the obligation to enforce a law that is content neutral and time, place and manner appropriate. Cox v. New Hampshire, 312 U.S. 569, 575-76 and 578 (1941).   The FRO prohibited "any (oral, written, personal or other) form of contact or communication with" Perito. Magenheimer was required to enforce the FRO.   The FRO did not improperly infringe on Plaintiff's First Amendment rights and no reasonable jury ·would find otherwise. Therefore, the Fourth Count in the Fourth Complaint must be dismissed, with prejudice, pursuant to a qualified immunity analysis under 42 U.S.C. §1983.

14

III. **THE STATUTE OF LIMITATIONS HAS RUN PRECLUDING PLAINTIFF FROM ASSERTING A LAD CLAIM**

**A.    The Statute of Limitations Has Run Precluding Plaintiff from Asserting an LAD Claim**

Assuming that the Court disagrees with Defendants that Plaintiff's LAD claims are precluded based upon a dismissal with prejudice of the First Count, which we dispute, Plaintiff's claims regarding racial harassment and hostile work environment are barred by a two-year limitations period that governs all civil suits under the Law Against Discrimination, <u>N.J.S.A.</u> 10:5-1 et. seq. <u>See,</u> <u>Mancini v. Twp. of Teaneck</u>, 179 N.J. 425, 846 A.2d 596 (2004) (citing <u>Montells v. Haynes</u>, 133 N.J. 282, 627 A.2d 654 (1993)); <u>Ali v. Rutgers</u>, 166 N.J. 280, 765 A.2d 714 (2000). "In <u>Montells v. Haynes</u>, 133 N.J. 282, 627 A.2d 654 (1993), the Supreme Court of New Jersey held that claims arising under the Law Against Discrimination, <u>N.J.S.A.</u> 10:5-1 to -49, are subject to the two-year statute of limitations for personal injuries found at <u>N.J.S.A.</u> 2A:14-2 rather than the general six-year limitations period established under <u>N.J.S.A.</u> 2A:14-1." <u>Ali, supra,</u> 765 A.2d at 715.

Plaintiff has testified that he was last allegedly harassed at work sometime in February through April 2005. Giving Plaintiff every favorable inference, even assuming April 30, 2005 as the last date of his alleged racial discrimination and harassment, Plaintiff had two years to file this claim, i.e, April 30, 2007. Plaintiff did not file a hostile work environment/discrimination claim until he filed his

Third Complaint on February 23, 2009, almost 22 months after the statute of limitations ran and 3 years and 10 months after the date that he allegedly was last subjected to a hostile work environment and/or racial harassment. Accordingly, any claim of racial discrimination/harassment is time barred.

**B.   The Continuing Violation Doctrine is Inapplicable**

Although Defendants maintain that Plaintiff's discrimination/harassment claim is time-barred, if the Court should rule otherwise, Defendants maintain that Plaintiff cannot avail himself of the continuing violations doctrine to allow for admission of any alleged prior discriminatory acts.

In employment discrimination suits, the statute of limitations typically begins to run when the cause of action accrues, or put another way, at "the time of the discriminatory act." Palatnik v. Home Depot, Inc., 2006 U.S. Dist. LEXIS 14073 *16 (citing Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 842 (3d Cir. 1992) (quoting Chardon v. Fernandez, 454 U.S. 6, 8 (1981)). "However, if the alleged discriminatory act constitutes part of a 'continuing violation,' then the statute of limitations begins to run at the time of the last occurrence of discrimination, rather than the first." Id. at *16-17 (citation omitted).

However, the continuing violation doctrine should not apply when the "nature of the violations should trigger an employee's awareness of the need to assert her rights." Bollinger v. Bell Atlantic, 330

16

N.J.Super. 300, 749 A.2d 857, 861 (App.Div. 2000) quoting <u>Bullington</u> <u>v. United Air Lines, Inc.</u>, 186 F.3d 1301, 1310 (10th Cir. 1999). The "purpose of the continuing violation doctrine is to permit a plaintiff to include acts whose character as discriminatory acts was not apparent at the time they occurred." <u>Hall v. St. Joseph's Hospital</u>, 343 N.J.Super. 88, 777 A.2d 1002, 1010 (App.Div. 2001).

Plaintiff has testified that he was last allegedly harassed and/or subject to a hostile work environment sometime in February through April 2005. Giving Plaintiff every favorable inference, we will assume April 30, 2005 as the date upon which he last became aware of alleged racial discrimination and/or harassment and/or hostile work environment. Plaitniff has further testified that he cannot recall the dates of prior instances except for a poster dated 2002. Plaintiff was aware of racial discrimination and harassment because he has testified that he filed a report in 2000 with Lt. Grzybowski. Accordingly, as Plaintiff claims he was aware of the impropriety of racial discrimination and harassment, Plaintiff cannot avail himself of the equitable nature of the continuing violation doctrine to include alleged instances that preceded 2005.

**IV. PLAINTIFF'S 42 U.S.C. §1983 FAILURE TO INSTRUCT AND/OR SUPERVISE CLAIM IN THE FIFTH COUNT MUST BE DISMISSED, IN PART, BECAUSE IT WAS FILED AFTER THE TWO YEAR STATUTE OF LIMITATIONS RAN.**

The Supreme Court looks to state tort law when discussing issues raised in Section 1983 cases. <u>Schneider v. Simonini</u>, 163 N.J. 336, 749 A.2d 336, 355 (2000). <u>Monell</u> identified a Section 1983 cause of

17

action as a "constitutional tort." *Schneider, supra,* 749 A.2d at 355 (citing *Monell, supra,* 436 U.S. at 691, 98 S. Ct. at 2036, 56 L. Ed. 2d 611)). Since *Monell,* the Court has made repeated references to state tort law. *Schneider, supra,* 749 A.2d at 355. *See, e.g., Wilson v. Garcia,* 471 U.S. 261, 276-78 (1985) (holding state statute of limitations for personal injury tort suits are to be applied in Section 1983 cases); *Smith v. Wade,* 461 U.S. 30, 38-48 (1983) (adopting tort punitive damages rules for Section 1983 cases); *Carey v. Piphus,* 435 U.S. 247, 258 (1978) (using tort damages principles as "the appropriate starting point for the inquiry under §1983"). "One commentator has described this trend as a shift away from 'constitutional rhetoric' toward 'tort rhetoric' in Section 1983 cases." *Id.* at 372 citing Sheldon Nahmod, *Section 1983 Discourse: The Move From Constitution to Tort,* 77 *Geo. L.J.* 1719, 1719 (1989).

The 2 year statute of limitations to bring a state law tort action has run. *N.J.S.A.* 2A:14-2 provides in pertinent part: "[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued. . ." Plaintiff alleges a violation of 42 *U.S.C.* § 1983 failure to instruct and/or supervise in the Fifth Count of the Fourth Complaint which was filed on December 28, 2009.

Ostensibly, Plaintiff's assertion of the failure to instruct and/or supervise is predicated either upon his termination on

18

September 25, 2006 or on the date of the Town meeting on October 22, 2007 when he was instructed to leave so as not to violate the FRO. The first time that Plaintiff asserted a 42 U.S.C. § 1983 failure to instruct and/or supervise claim was in the Third Complaint filed on February 23, 2009 which was 3 years and 5 months past the date of his employment termination.  Accordingly, Plaintiff's claim as it relates to his employment must be dismissed with prejudice because the two-year Statute of Limitations has run.

V.   **PUNITIVES DAMAGES AS TO THE TOWN OF GUTTENBERG, DELLE DONNA AND MAGENHEIMER MUST BE DISMISSED.**

Punitive damages are to be awarded only in "exceptional" cases where the defendant's conduct is "especially egregious." Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202, 1215 (1995); Catalane v. Gilian Instrument Corp., 271 N.J. Super. 476, 638 A.2d 1341, 1354 (App. Div. 1994). The law in New Jersey is very clear that even in situations where it is determined that the LAD has been violated punitive damages will only be awarded in exceptional situations. Catalane, supra, 638 A.2d at 1354. In order to justify an award of punitive damages, there must be "actual malice." Rendine, supra, 661 A.2d at 1215. "There must be an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by wanton and willful disregard for the rights of another. . .The key to the right to punitive damages is the wrongfulness of the intentional act." Id. (quoting Nappe v.

19

Anschelewitz, Barr Ansell & Bonello, 97 N.J. 37, 477 A.2d 1224, 1230 (1984).

The Punitive Damages Act, N.J.S.A. 2A:15-5.9 et al., guides the judicial process for the possible award of punitive damages.  The Act requires "clear and convincing evidence" that the harm suffered was due to the defendant's actions and were actuated by "actual malice" or a "wanton and willful disregard" for the person harmed.  N.J.S.A. 2A:15-5.12(a).  "Actual malice" is defined as an "intentional wrongdoing in the sense of an evil-minded act."  N.J.S.A. 2A:15-5.10. "Wanton and willful disregard" is defined as a "deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of the act or omission."  N.J.S.A. 2A:15-5.10.  Consideration must be also given to the defendant's awareness of reckless disregard that serious harm would arise from the defendant's conduct.  N.J.S.A. 2A:15-5.12(b)(2).

As discussed at great length above, there can be no factual basis for a finding that Magenheimer is liable for punitive damages based upon his having acted objectively, and even subjectively, reasonable by removing Plaintiff from the public meeting based upon Perito having a FRO issued against Negron.  There is no claim the FRO was invalid and unenforceable.  Plaintiff fails to provide clear and convincing evidence that Magenheimer's actions could rise to the level of "exceptional" or "especially egregious" where punitive damages may be awarded.  The record is also completely devoid of any acts on the part

20

of Magenheimer which could constitute "actual malice" or "wanton and willful disregard" as required.

With respect to the CEPA claim, the facts prove conclusively that Plaintiff alone is responsible for his loss of employment – because he exhibited behavior in his relationship with Perito that warranted the imposition of an FRO, which was upheld on appeal.   It was the imposition of the first TRO requiring Negron to surrender his weapons as a police officer and resulting examination of Plaintiff on September 20, 2005 by the Institute for Forensic Psychology which resulted in a report that Plaintiff was not fit for duty and with the recommendation that Plaintiff be terminated.   On January 11, 2007, in Docket No. A-3817-05T1, the New Jersey Appellate Division affirmed the FRO issued against Plaintiff.   Plaintiff cannot meet the rigorous standards for an award of punitive damages.   There is no factual basis for a reasonable jury to find a claim of punitive damages against the Town and/or Delle Donna on the CEPA claim.   Lastly, the Town is immune from punitive damages.   N.J.S.A. 59:9-2(c).

**VI.   PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE TO SUPPORT HIS CEPA CLAIM AND THE SIXTH COUNT OF THE FOURTH COMPLAINT MUST BE DISMISSED**

**A.   Plaintiff Cannot Establish the Elements for a CEPA Claim.**

The Sixth Count must be dismissed because Plaintiff cannot establish a *prima facie* case for violations of CEPA.   N.J.S.A. 34:19-1 et.seq.   The purpose of CEPA is to "protect employees who report illegal or unethical work-place activities."   Higgins v. Pascack

21

<u>Valley Hospital</u>, 158 N.J. 404, 418 (1999).  "Generally speaking, the CEPA codified the common-law cause of action. . .which protects at-will employees who have been discharged in violation of a clear mandate of public policy." <u>Id.</u> at 418-419.  The core value that infuses CEPA is the legislative determination to protect from retaliatory discharge those employees who, 'believing that the public interest overrides the interest of the organization [they] serve, publicly 'blow the whistle' [because] the organization is involved in corrupt, illegal, fraudulent or harmful activity.' <u>Mehlman v. Mobil Oil Corp.</u>, <u>153 N.J. 163, 187-88</u> (1998).

In order to establish a *prima facie* case of a CEPA violation, plaintiff must establish: (1) that he or she reasonably believed that his or her employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law; (2) that he or she performed whistle-blowing activity described in <u>N.J.S.A.</u>  34:19-3a, c(1) or c(2);  (3) an adverse employment action was taken against him or her; and  (4)  a causal  conviction  exists  between  the  whistle-blowing activity and the adverse employment action." <u>Mosley v. Femina Fashions</u>, 356 N.J. Super. 118, 126 (App. Div. 2002), <u>cert.</u> <u>denied</u>, 176 N.J. 276 (2003).

All CEPA claims are analyzed pursuant to the burden-shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, <u>411 U.S 792, 802</u> (1973); <u>see</u> <u>Blackburn v. United Parcel Serv., Inc.</u>, <u>3 F. Supp. 2d 504</u> (D.N.J. 1998) <u>aff'd</u> <u>179 F.3d 8</u> (3d Cir. 1999).  In order

to survive a motion to dismiss, a plaintiff must first establish a *prima facie* case based on the four elements above; the burden then shifts to the defendants to establish a legitimate, non-pretextual reason for the adverse employment action, and then if the defendants establish this, the burden shifts back to the plaintiff to demonstrate that the purported legitimate, non-pretextual reason for the adverse employment action was pretextual. McDonnell Douglas, supra.

Plaintiff cannot establish a *prima facie* case and more specifically, cannot establish that the facts of this case remotely encompass the activities sought to be protected by the Act. There is no evidence of a nexus between the alleged whistle blowing activity, cooperating with the U.S. Attorney, and the alleged retaliation, his employment termination.

The time line or chronology unequivocally show that: (1) Plaintiff's own behavior resulted in his termination – a domestic violence complaint resulting in the issuance of the first TRO on August 29, 2005 and surrender of his weapons; (2) Plaintiff knew prior to his cooperating with the U.S. Attorney beginning on February 24, 2006 that his psychological fitness-for-duty examination on September 20, 2005 concluded that he was unfit for duty and that termination was recommended; and (3) Plaintiff knew prior to his cooperating with the U.S. Attorney that a second TRO dated October 20, 2005 issued requiring his surrender of weapons.

23

Plaintiff ignores the inescapable reality that the single catalyst that led to his termination was the domestic violence complaint filed by Perito. This complaint legally triggered the cascade of events which led to his termination, a sequence that was neither precipitated nor controlled by the Town or Delle Donna. The Hudson County Prosecutor's directive mandating a fitness-for-duty evaluation inexorably followed the domestic violence complaint. The Town and Delle Donna have provided a non-pretextual explanation which Plaintiff cannot explain away.

The purported remark of the Town attorney to Carlos Garcia that Plaintiff would be "out of the picture soon" provides no support to Plaintiff. The September 18, 2006 report from the Guttenberg Police Committee recommended Plaintiff's termination and listed the evidence which it was presented. Conspicuously absent from the list is a report from any expert offered by Plaintiff that he was fit for duty. Based on the unrefuted opinion of Dr. Gallegos, the Town's decision was evident  Therefore, if the Town attorney did make the statement, which is not conceded, he was merely stating the obvious. There is no causation between Plaintiff's termination and his cooperation with the U.S. Attorney, as the catalyst for the termination pre-dates his cooperation with the U.S. Attorney. Plaintiff cannot make a *prima facie* case for a CEPA violation because the undisputed time line of events shows that the alleged whistle-blowing occurred long after the

24

process leading to termination was under way and no reasonable jury would find otherwise.

Even if the Court finds that the Plaintiff can establish a *prima facie* case, the undisputable evidence is that there was a legitimate non-pretextual reason for the termination of Negron's employment -- Plaintiff had two separate TROs and a FRO issued against him, he was not permitted to carry a firearm, and he had been deemed unfit for duty. As noted above, the filing of the first TRO triggered the requirement from the Hudson County Prosecutor that Plaintiff present for a fitness-for-for duty examination which resulted in him being found unfit for duty, thus setting in motion the apparatus for his eventual employment termination which is the subject of this suit. However, even if this Court should reject any aspect of the timeline, Defendants respectfully submit that Plaintiff still cannot establish any nexus between his whistle blowing and his termination. Respectfully, dismissal of the CEPA claim is warranted and proper as no reasonble jury would find a legally sufficient basis to find for Plaintiff.

**B.    There is No Nexus Between the Alleged Whistle Blowing Activity and the Alleged Retaliation.**

Plaintiff is unable to prove that any action taken by the Town and Delle Donna[1] was retaliatory in nature. Plaintiff cannot prove his

---

[1] As argued in Point VII, Delle Donna cannot have liability under CEPA. However, should the Court rule otherwise, Delle Donna is included in the present argument.

claim of retaliation merely by conclusory statements or by speculating that the action taken against him was in response to disclosure he made or threatened to make.    Littman v. Firestone Tire & Rubber Co., 715 F. Supp. 90, 93 (S.D.N.Y. 1989) (interpreting New Jersey law). Rather, Plaintiff must adduce tangible evidence of retaliatory action. N.J.S.A. 34:19-3.

In evaluating the employment action taken by the Town in this case, it is imperative to understand that a court may not act as a human resources department or manager and substitute its own view of what is right for a business but must defer to business decisions of the employer so long as they are not illegal.  As noted in other employment cases, "barring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions." Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991). A "plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision.  Without some evidence to cast this doubt, this Court will not interfere in an otherwise valid management decision." Id. at 828, (citing Lucas v. Dover Corp., 857 F.2d 1397, 1403-04 (10th Cir. 1988)(a court will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives)).

In order to establish his claim against the Town and Delle Donna, Plaintiff must prove that disciplinary action taken against him was in

26

retaliation for his cooperation with the U.S. Attorney, which occurred for the very first time on February 24, 2006. Negron's cooperation with the U.S. Attorney occurred six (6) months after the issuance of the first TRO (August 29, 2005) and five (5) months after Plaintiff was found unfit for duty (September 20, 2005). Plaintiff is incapable of establishing a nexus between the alleged whistle blowing activity and the alleged retaliation because all of the evidence proves otherwise. Accordingly, the CEPA claim must be dismissed as no reasonable jury would find a legally sufficient basis in Plaintiff's favor.

**C. Plaintiff Has Failed to Demonstrate that Defendants' Legitimate Justification for Termination Was Pretext**

Plaintiff's CEPA claim in the Sixth Count of the Fourth Complaint must be dismissed, as Plaintiff has failed to rebut Defendants' articulated legitimate justification for termination. Under New Jersey law, "the basic framework . . . illustrates that, to defeat summary judgment when the defendant answers the plaintiff's *prima facie* case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder ·would reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. . . ." <u>Fuentes v. Perskie</u>, 32 F.3d 759 (3d Cir. N.J. 1994). "[To do so,] the non-moving

27

plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence,' . . . and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Id. See also, Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993) (the proper inquiry is whether the plaintiff had proffered sufficient evidence of "inconsistencies and implausibilities in the employer's proffered reasons"); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 527 (3d Cir. 1992) (plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision).

The Town and Delle Donna have consistently articulated the legitimate and non-discriminatory reason for Plaintiff's termination: (1) Plaintiff's own behavior resulted in his termination – a domestic violence complaint resulting in the issuance of the first TRO on August 29, 2005 and removal of his weapons; (2) Plaintiff knew prior to his cooperating with the U.S. Attorney beginning on February 24, 2006 that his psychological fitness-for-duty examination concluded that he was unfit for duty and that termination was recommended; and (3) Plaintiff knew prior to his cooperating with the U.S. Attorney that a second TRO dated October 20, 2005 issued requiring his surrender of weapons.

Even after affording every favorable inference to Negron including the disputed claim that Delle Donna encouraged Perito to file the TROs and FRO in an alleged scheme to have Negron lose his employment as a police officer, there was no logical, conceptual or actual way for Delle Donna to know that (1) Negron would fail his mandated fitness-for-duty examination, (2) Negron would be unable to account for one of his firearms, (3) Negron would not offer any expert testimony before the police committee to refute Dr. Gallegos's opinion, and (4) six months after the first TRO was filed, Negron would have an initial meeting with the U.S. Attorney on February 24, 2006 about purported corruption by Delle Donna. This last element, although unsupported by evidence, is the linchpin of Negron's argument in support of his CEPA claim that his "whistleblowing" to the U.S. Attorney about Della Donna's activities caused retaliation by Della Donna in Negron losing his employment. Plaintiff's reasoning is fatally flawed and unsupported by any evidence in the record.

Plaintiff has failed to offer any evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" to demonstrate pretext and no reasonable jury would find otherwise. Accordingly, the Town and Delle Donna respectfully request that this Court dismiss Plaintiff's CEPA claims.

**VII. PLAINTIFF'S CEPA CLAIM SHOULD BE DISMISSED AGAINST THE INDIVIDUALLY NAMED DEFENDANT DELLE DONNA**

The CEPA claim in the Sixth Count of the Fourth Complaint fails against defendant Delle Donna because CEPA does not provide for individual liability.  Although the New Jersey Supreme Court has not directly decided the issue of individual liability under the CEPA, in Higgins v. Pascack Valley Hospital, 158 N.J. 404, 730 A.2d 327 (1999), the Court left undisturbed a trial court's ruling dismissing the individual defendants from the CEPA claim.  On the only occasion that the New Jersey Supreme Court considered individual liability under CEPA, it left standing a trial court ruling that no individual liability exists.  In Ecker v. Dana Transportation Systems, Inc., 2006 WL 740468 at *2 (New Jersey Law Division, February 3, 2006), the trial court relied on Higgins to conclude that CEPA did not provide for individual liability.  In Ecker, the court also noted that unlike the New Jersey Law Against Discrimination, CEPA does not include an aiding and abetting clause for liability as to individual defendants.  Accordingly, the Sixth Count in the Fourth Complaint against Delle Donna must be dismissed with prejudice.

## VIII.  THE WAIVER PROVISION OF CEPA BARS ALL COMMON LAW CLAIMS

Plaintiff alleges a CEPA in the Sixth Count.  The CEPA waiver provision bars all common law claims and therefore, as a matter of law, dismissal of all claims of racial harassment, hostile work environment, and emotional distress alleged in the Fourth and Fifth Counts is warranted.  The CEPA waiver provision, N.J.S.A. 34:19-8, provides:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

In _Young v. Schering Corporation,_ 141 N.J. 16, 660 A.2d 1153 (1995), the New Jersey Supreme Court held former employees were precluded from pursuing common law claims when they are not sufficiently distinct from claims under CEPA because CEPA's waiver provision applied to causes of action that were substantially similar to the CEPA cause of action.   In _Flaherty v. The Enclave_, 255 N.J. Super. 407, 605 A.2d 301 (Law Div. 1992), the plaintiff filed a complaint consisting of eight counts, each seeking alternative relief.   The defendant made a motion seeking to dismiss all counts but the count for relief under CEPA.   Where the claim is for retaliatory action based on the employee's disclosure of wrongdoing, it would fall under CEPA and be waived, but if it concerns collateral issues, which would not be a violation of CEPA even if proven, the claims would remain.   _Id._ at 304.

In _Cokus v. Bristol Myers Squibb Co._, 362 N.J.Super. 366, 827 A.2d 1173 (Law Div. 2002), _aff'd,_ 362 N.J.Super. 245, 827 A.2d 1098 (App.Div. 2003), cert. den. 178 N.J. 32, 834 A.2d 405 (2003), the Appellate Division found that where the plaintiff's claim for

intentional inflication of emotional distress was based on the same facts that formed the basis of her CEPA claim, the waiver provision of CEPA barred the claim for intentional inflication of emotional distress. In applying the waiver provision of CEPA to bar this claim, the Cokus Court reasoned that all the facts that the plaintiff asserted in connection with her claim for intentional inflication of emotional distress arose out of her whistle blowing activities from which the resulting retaliation allegedly followed. See also, Crane v. Yurick, 287 F.Supp.2d 552, 562 (D.N.J. 2003) (summary judgment granted for defendants on plaintiff's claim for a violation of the free speech provisions of the New Jersey State Constitution because the claim "falls squarely within the waiver exception provided by CEPA, as it is a claim based in state law).

As a matter of law, the Fourth and Fifth Counts of the Plaintiff's Fourth Complaint should be dismissed on the basis of the waiver provision of CEPA, because the common law causes of action are based upon the same set of facts that form the basis of Plaintiff's CEPA claim. The Fourth and Fifth Counts of the Plaintiff's Fourth Complaint are substantially, if not totally and completely, dependent upon the facts underlying Plaintiff's CEPA claim, as stated fully in the Sixth Count of the Fourth Complaint. All of the facts that Plaintiff asserts in connection with his claim for hostile work environment, which we assert was dismissed, and negligent inflication of emotional distress arise out of Plaintiff's whistle blowing

32

activities from which the resulting alleged retaliation flowed. Hence, the waiver provision of CEPA applies to this claim. As in Young, dismissal of the Fourth and Fifth Counts, and if the court deems, the First Count, of the Fourth Complaint is warranted in order to "curtail essentially cumulative remedial actions."

Based upon the foregoing, all common law claims contained within the Plaintiff's Fourth Complaint should be dismissed with prejudice as a matter of law based upon the waiver provision of the CEPA statute.

## IX.  PLAINTIFF'S LAD CLAIMS ARE SUBJECT TO DISMISSAL UNDER CEPA'S WAIVER PROVISIONS

Defendants contend that Plaintiff's LAD claims have been dismissed. Notwithstanding that assumption, any alleged LAD claims in the Fourth Complaint are subject to dismissal because under the waiver provisions of CEPA, Negron cannot assert both a CEPA and LAD claim for his allegations of harassment and retaliation.

N.J.S.A. 34:19-8 of CEPA states that the institution of a CEPA action "shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law." The waiver provisions of CEPA operate to bar any cause of action that requires a finding of retaliatory conduct. Young, supra,; Notte v. Merchants Mut. Ins. Co., 386 N.J.Super. 623, 902 A.2d 352, 356, 185 N.J. 490, 502 (2006). A claim of retaliation or harassment under the LAD would therefore be subject to dismissal under the CEPA waiver provisions once the

plaintiff elects to proceed with a CEPA action. See, Beasley v. Passaic County, 377 N.J.Super. 585, 873 A.2d 673, 687 (App.Div. 2005)(affirming dismissal of plaintiff's LAD harassment allegations under the waiver provisions of CEPA).

Both Negron's alleged LAD and actual CEPA claims make virtually identical allegations of alleged harassment, hostile work environment, retaliatory conduct and/or retaliatory termination from employment. Therefore, any claims of retaliation and/or harassment and/or hostile work environment in violation of the LAD in the Fifth Count are subject to dismissal under the CEPA waiver provision since Negron asserts claims of CEPA retaliation and harassment in the Sixth Count. Therefore, all claims alleging violations of the LAD are waived and must be dismissed.

## X.   PLAINTIFF CANNOT ESTABLISH PERMANENCY OF EMOTIONAL DISTRESS CLAIMS WITHOUT EXPERT OPINION.

The issue presented before the Court is very narrow: it is not that the Plaintiff needs expert testimony to prove an emotional distress claim under CEPA but rather, the Plaintiff needs expert testimony to prove permanency of alleged injury. It is the well settled law of this state that "[t]he question of the prognosis of an injury and probable permanent disability is one necessarily within the ambit of expert medical opinion (except for disabilities which are apparent to a layman, such as an amputated body member)." Clifford v. Opdyke, 156 N.J.Super. 208, 383 A.2d 749, 752 (App.Div. 1978).

34

Further, "the burden of proving such permanency by competent medical testimony rests of course with plaintiff." Id.

The law is clear, and the fact that Negron does not have expert testimony regarding any claim of permanency to his claim of emotional distress means that Negron cannot assert permanency. Allowing a jury to wander into trying to determine permanency of emotional distress damages without expert guidance runs afoul of the evidentiary standards imposed by Fed. R. Evid. 702 and cannot be tolerated. Fed. R. Evid. 702 provides that:

> [i]f scientific, technical, or other specialized
> knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or
> education, may testify thereto in the form of an
> opinion or otherwise, if (1) the testimony is
> based upon sufficient facts or data, (2) the
> testimony is the product of reliable principles
> and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of
> the case.

In Salem v. United States Line Co., 370 U.S. 31, 35 (1958), the Supreme Court held that generally, expert testimony is required if the issue to be addressed is not within the common understanding or knowledge of the jury. Expert testimony is required under Fed. R. Evid. 702 where "specialized knowledge" would help a jury "to understand the evidence or to determine a fact in issue." U.S. v. Garcia, 447 F.3d 1327, 1335 (11th Cir. 2006). Where the issue in question is beyond the ken of the average juror, expert testimony is

required.   In   Floorgraphics, Inc. v. News Am. Mktg. In-Store Srvs.,
546  F.Supp.2d  155  (D.N.J.  2008),  the  court  concluded  that  expert
testimony  was  required  where  the  jury  would  otherwise  have  had  a
difficult time measuring damages since it would not have been able to
comprehend  the  detailed  nuances  of  the  lost  wage  claim.   See  also,
U.S. v. Ginsberg,  758  F.2d  823,  830  (2nd  Cir.  1985)  (operations  of
narcotics  dealers  is  a  proper  subject  of  expert  testimony);  Surles  v.
Greyhound  Lines,  Inc.,  474  F.3d  288,  293-94  (6th  Cir.  2007)  (expert
testimony  of  threat  assessment  specialist  was  proper  to  assist  the
jury  understand  the  significance  of  prior  history  reports  as  it
impacted  on  feasibility  of  provision  of  entry-resistant  barriers  to
prevent passenger attacks on bus drivers).

   N.J.R.E.  702  tracks  Fed. R. Evid.  702  and  provides  additional
insight into the role and need for expert testimony and sets forth the
basic  standard  by  which  the  admission  of  expert  testimony  is  guided.
In  the  context  of  the  present  case,  the  key  criterion  is  whether
expert  testimony  would  "assist  the  trier  of  fact  to  understand  the
evidence."  As held in Butler v. Acme Markets, Inc.,  89 N.J. 270, 445
A.2d 1141, 1147 (1982),

>       [t]he test of need of expert testimony is whether
>       the matter to be dealt with is so esoteric that
>       jurors of common judgment and experience cannot
>       form a valid judgment as to whether the conduct of
>       the party was reasonable. (internal citation
>       omitted).

36

A jury is not allowed to speculate without expert testimony in an area where a layperson could not be expected to possess sufficient knowledge or experience. <u>Kelly v. Berlin</u>, 300 N.J.Super. 256, 692 A.2d 552, 558 (App. Div. 1997).

Negron has no expert to opine regarding allegations of permanency of his alleged emotional distress claims and, therefore, permanency, as an element of damages, cannot be presented to the jury.

## XI. CONCLUSION

It is respectfully submitted that dismissal should be granted dismissing the Fourth, Fifth and Sixth Counts in the Plaintiff's Fourth Complaint against defendants, Town of Guttenberg, Lieutenant Joel Magenheimer, and David Delle Donna, with prejudice.

> MARSHALL, DENNEHEY, WARNER, COLEMAN
> & GOGGIN
>
> Attorneys for Defendants
>
> By: /s/ Bruce A. Seidman
> BRUCE A. SEIDMAN, ESQ.

Date: March 4, 2011

11/1226081.v1